DIANA CLINE EBRON, ESQ.
Nevada Bar No. 10580
E-mail: diana@KGELegal.com
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
E-mail: jackie@KGELegal.com
KAREN L. HANKS, ESQ.
Nevada Bar No. 09578
E-mail: karen@KGELegal.com
KIM GILBERT EBRON (FKA HOWARD KIM & ASSOCIATES)
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S BANK, NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>SFR INVESTMENTS POOL 1, LLC, a Nevada Limited Liability Company; DOES 1 through 10; and ROE BUSINESS ENTITIES 1 through 10, inclusive,<br><br>Defendants. | **Case No.: 2:15-cv-00287-APG-GWF**<br><br>**SFR INVESTMENTS POOL 1, LLC's MOTION FOR SUMMARY JUDGMENT** |

SFR Investments Pool 1, LLC ("SFR") hereby moves for summary judgment against U.S BANK, NATIONAL ASSOCIATION (the "Bank") pursuant to FRCP 56(c) as to the Bank's allegations relating to commercial reasonableness. This Motion is based on the papers and pleadings on file herein, the following points and authorities, the Declaration of Diana Cline Ebron, Esq. ("Ebron Decl."), attached as **Exhibit A,** the Declaration of Christopher Hardin ("Hardin Decl."), attached as **Exhibit B**, and such evidence and oral argument as may be presented at the time of the hearing on this matter.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

This case arises from SBH Community 3 homeowners association's (the "Association") foreclosure of real property commonly referred to as 9574 Bouncing Ball St., Las Vegas Nevada 89187-APN 176-20-418-004- (the "Property"). Specifically, on September 13, 2013, the

- 1 -

Association held a public auction of the Property based on unpaid monthly assessments. Despite being sent the notice of default and notice of sale, Five Star Mortgage ("Five Star") and MERS the then holder of the First Deed of Trust and purported predecessor in interest to U.S. Bank, failed to properly protect its interest in the Property.  At the foreclosure sale, SFR made the highest bid.

The Bank now alleges in its Complaint in this matter that the "HOA sale did not extinguish the Plaintiff's security interest in the Subject Property because … the bid price was commercially unreasonable." Complaint, Dkt. #1 at 4:1-3.  By way of support, the Complaint alleges only that "The fair market value of the Subject Property far exceeds the purported bid price of $12,000.00. Id. at 3:25-26.

Unfortunately for the Bank, Nevada law is unquestionably clear – without a showing of fraud, unfairness or oppression, inadequacy of price alone is insufficient to justify setting aside a sale.  Even more, in the instant case, not only has the Bank failed to present any evidence of unfairness, oppression, or fraud; but, the Bank has not even demonstrated an inadequacy of price because it has not presented any evidence of the Property's value at the time of the Association's foreclosure sale.  Accordingly, by way of this Motion, SFR seeks summary judgment as a matter of law on the Bank's claims as they relate to commercial unreasonableness.  Specifically, SFR seeks summary judgment quieting title in the name of SFR and a ruling that the defunct deed of trust purportedly held by the Bank should be permanently removed from title.

## II.   STATEMENT OF UNDISPUTED FACTS

The following contains facts undisputed by either party and is supported by the pleadings filed in this action, documents publicly recorded with the Clark County Recorder, documents produced by third-parties via subpoena or information provided via deposition testimony:

///

///

| DATE | FACTS |
|---|---|
| 1991 | Nevada adopted Uniform Common Interest Ownership Act as NRS 116, including NRS 116.3116(2). |
| November 23, 2005 | Association perfected and gave notice of its lien by recording its Declaration of CC&Rs as Instrument No. 20051123-0002225.[1] |
| November 25, 2008 | Grant, Bargain, Sale Deed recorded transferring the Property to John Hudson ("Hudson").[2] |
| November 25, 2008 | First Deed of Trust in favor of Five Star recorded as Instrument No. 20081125-0001623.[3] The lender prepared, and Hudson signed, a PUD Rider as part of the First Deed of Trust, recognizing the need to pay assessments to the Association and the ability of the lender to pay the assessments should Hudson default. |
| November 8, 2012 | Notice of Delinquent Assessment Lien recorded by the Association via its collection agent, Nevada Association Services, Inc. ("NAS").[4] |
| January 8, 2013 | Notice of Default and Election to Sell Under Homeowners Association Lien recorded via Association's collection agent, Nevada Association Services, Inc. ("NAS").[5]<br><br>NAS mailed the Notice of Default to Five Star and Mortgage Electronic Registration Systems, Inc. ("MERS"), the nominee for lender and beneficiary under the First Deed of Trust.[6] |
| January 16, 2013 | MERS assigned and transferred to U.S. Bank National Association all beneficial interest under the Deed of Trust dated November 17, 2008 ("Assignment"). |
| March 25, 2013 | MERS reordered the Assignment as Instrument No. 201303250002583. |
| July 16, 2013 | NAS on behalf of the Association recorded Notice of Foreclosure Sale.[7] |
| July 12, 2012 | NAS mailed the Notice of Sale to **U.S. Bank** and **MERS**.[8] |

---

[1] See Declaration of Covenant a, Condition, Restrictions, Reservations and Easements for SBH Community 3, attached to Ebron Decl. as **Exhibit A-1.**
[2] See Grant, Bargain, Sale Deed, attached to Ebron Decl. as **Exhibit A-2.**
[3] See First Deed of Trust, attached to Ebron Decl. as **Exhibit A-3.**
[4] See Notice of Delinquent Assessment Lien, Attached to Ebron Decl. as **Exhibit A-4.**
[5] See Association Notice of Default, attached to Ebron Decl. as **Exhibit A-5.**
[6] See Excerpts from documents produced by NAS in response to subpoena, attached to Ebron Decl. as **Exhibit A-6**. See specifically, proof of mailings of Notice of Default at Bates No. [USB-000638-658]
[7] See Notice of Foreclosure Sale, attached to Ebron Decl. as **Exhibit A-7.**
[8] Ex. A-6, See specifically, proof of mailings of Notice of Sale at Bates No.[USB000691-USB000696].

- 3 -

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

| | |
|---|---|
| September 13, 2013 | Association foreclosure sale took place, and SFR placed winning bid of $12,000.00.[9] |
| | There was more than one bidder in attendance at the sale.[10] |
| | The Bank did not attend the sale.[11] |
| September 24, 2013 | Association Foreclosure Deed vesting title in SFR recorded.[12] As recited in the Foreclosure Deed, the Association foreclosure sale complied with all requirements of law, including but not limited to recording and mailing of copies of notices, posting and publication of the Notice of Sale. |
| | SFR has no reason to doubt the recitals in the Foreclosure Deed — if there were any issues with delinquency or noticing, none of these were communicated to SFR.[13] |
| | Further, neither SFR, nor its manager, have any relationship with the Association besides owning property within the community and bidding on properties at auction.[14] |
| | Similarly, neither SFR, nor its manager, have any relationship with the Association's agent, NAS, beyond attending auctions and bidding on properties.[15] |
| Before September 13, 2013 | No release of the super-priority lien was recorded.[16] |
| | No lis pendens was recorded by Five-Star, MERS or U.S. Bank.[17] |
| March 26, 2013 | Assignment transferring the beneficial interest in the First Deed of Trust to U.S. Bank Mortgage LLC, recorded as Instrument No. 201303260003544.[18] |
| November 01, 2013 | Substitution of Trustee, substituting National Default Servicing Corporation ("NDSC") under First Deed of Trust, recorded as Instrument No. 201311010001859.[19] |
| June 5, 2014 | National Default Servicing Corporation ("NDSC") recorded a Notice of Default and Election to Sell Under Deed of Trust.[20] |

---

[9] See Foreclosure Deed, attached to Ebron Decl. as **Exhibit A-8.**
[10] See Exhibit 2, at ¶ 11.
[11] See Excerpts from Deposition of Bryan Edward Heifner, 30(b)(6) witness on behalf of U.S. Bank, 43:10 to 44:9 and attached to Ebron Decl. as **Exhibit A-9.**
[12] Id.
[13] See Exhibit 2, at ¶ 7.
[14] Id. at ¶ 8.
[15] Id. at ¶ 9.
[16] Id. at ¶ 10.
[17] Id. at ¶ 6.
[18] See Assignment of First Deed of Trust, attached to Ebron Decl. as **Exhibit A-10**.
[19] See Substitution of Trustee, attached to Ebron Decl. as **Exhibit A-11.**
[20] See First Deed of Trust Notice of Default, attached to Ebron Decl. as **Exhibit A-12**.

- 4 -

| | |
|---|---|
| February 18, 2015 | U.S. Bank filed its complaint against SFR for quiet title and declaratory relief in the United States District Court District of Nevada (Las Vegas) (Case No. 2:15-cv-00287-APG-GWF).[21]<br><br>U.S. Bank's Complaint alleges that the "HOA sale did not extinguish the Plaintiff's security interest in the Subject Property because … the bid price was commercially unreasonable."[22]<br><br>By way of support, the Complaint alleges only that "The fair market value of the Subject Property far exceeds the purported bid price of $12,000.00. Id. at 3:25-26.[23]<br><br>U.S. Bank provided no additional evidence as to fraud, unfairness or oppression. SFR purchased the property with the highest bid of $12,000, in September 2013, at a publically noticed, publically held auction. Complaint, Dkt. #1, Ex. A at 8.[24] |
| April 21, 2015 | SFR recorded a Notice of Lis Pendens regarding the Property as Instrument No. 201504210000731.[25] |
| June 04, 2015 | Motion to Dismiss filed by Defendant SFR Investments Pool I, LLC. |
| June 22, 2015 | Response to Motion to Dismiss and Countermotion for Summary Judgment by Plaintiff US Bank.<br><br>To establish fair market value, U.S. Bank provides only the original loan amount of $167,785, as listed in the November 2008 deed of trust.[26] |
| July 16, 2015 | Reply to Plaintiff's Response to Motion to Dismiss<br><br>Response to Countermotion for Summary Judgment filed by Plaintiff US Bank |
| August 3, 2015 | Reply to Response to Countermotion for Summary Judgment filed by Plaintiff US Bank |
| March 28, 2016 | Order Granting the Defendant's Motion to Dismiss and Denying the Plaintiff's Motion for Summary Judgment[27] |

---

[21] See Complaint (2:15-cv-00287-APG-GWF), attached to Ebron Decl. as **Exhibit A-13.**
[22] Id. at 4:1-3.
[23] Id. at 3:25-26
[24] Id., Ex. A at 8.
[25] See Notice of Lis Pendens, attached to Ebron Decl. as **Exhibit A-14**.
[26] See Countermotion for Summary Judgment, Dkt #12, Ex. 1, attached to Ebron Decl. as **Exhibit A-15**.
[27] See Order, Dkt #31, attached to Ebron Decl. as **Exhibit A-16**.

- 5 -

### III. LEGAL ARGUMENT

#### A. Motion for Summary Judgment Standard.

Summary judgment is appropriate when the pleadings and other evidence on file demonstrate that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law.'" FRCP 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Wood v. Safeway, Inc., 121 P.3d 1026, 1029 (Nev. 2005). Additionally, "[t]he purpose of summary judgment 'is to avoid a needless trial when an appropriate showing is made in advance that there is no genuine issue of fact to be tried, and the movant is entitled to judgment as a matter of law.'" McDonald v. D.P. Alexander & Las Vegas Boulevard, LLC, 123 P.3d 748, 750 (Nev. 2005) quoting Coray v. Home, 389 P.2d 76, 77 (Nev. 1964). Moreover, the non-moving party "must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against [it]." Wood, 121 P.3d at 1031; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "is not entitled to build a case on the gossamer threads of whimsy, speculation, and conjecture." Id. Rather, the non-moving party must demonstrate specific facts as opposed to general allegations and conclusions. LaMantia v. Redisi, 38 P.3d 877, 879 (Nev. 2002); Wayment v. Holmes, 912 P.2d 816, 819 (Nev. 1996). Though inferences are to be drawn in favor of the non-moving party, an opponent to summary judgment, like The Bank, must show that it can produce evidence at trial to support its claim or defense. Van Cleave v. Kietz-Mill Minit Mart, 633 P.2d 1220, 1222 (Nev. 1981).

#### B. SFR is Entitled to Summary Judgment on the Bank's Claim for Quiet Title Because the First Deed of Trust Was Extinguished by the Association's Non-Judicial Foreclosure Sale.

In Nevada, a homeowners association has a lien for delinquent assessments, a portion of which has priority over a first deed of trust. NRS 116.3116(2);[28] SFR Investments Pool 1, LLC, v. U.S. Bank, N.A., 334 P3d 408, 419 (Nev. 2014).  Furthermore, when an association forecloses on its lien for delinquent assessment, the purchaser at the foreclosure sale receives "a deed without warranty which conveys to the grantee all title of the unit's owner to the unit[.]"

---

[28] All references to NRS 116 are to the statutes in effect and governing the foreclosure sale in September 2013.

- 6 -

NRS 116.31164(3)(a).

As the Bank is well aware, under Nevada law, foreclosure sales and the resulting deeds are presumed valid. NRS 47.250(16)-(18) (stating that there are disputable presumptions "that the law has been obeyed"; "that a trustee or other person, whose duty it was to convey real property to a particular person, has actually conveyed to that person, when such presumption is necessary to perfect the title of such person or a successor in interest"; "that private transactions have been fair and regular"; and "that the ordinary course of business has been followed.")

"A presumption not only fixes the burden of going forward with evidence, but it also shifts the burden of proof." Yeager v. Harrah's Club, Inc., 897 P.2d 1093, 1095 (Nev. 1995) (citing Vancheri v. GNLV Corp., 777 P.2d 366, 368 (Nev. 1989).) "These presumptions impose on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Id. (citing NRS 47.180.). Here, for the Bank to prevail, it has the burden to prove that it is more probable than not that the Association foreclosure sale and the resulting foreclosure deed are invalid. Yet the Bank has not produced any admissible evidence to prove such an allegation that would allow the sale to be set aside.[29] To overcome the presumption of validity, the Bank must plead and prove a claim for fraud with particularity or allege some unfairness or oppression that is not overshadowed by its own bad acts. The Bank has waived any right to challenge the sale.

Additionally, on September 18, 2014, the Nevada Supreme Court issued its opinion in SFR., concluding that NRS 116.3116(2) gives associations a true super-priority lien, the non-judicial foreclosure of which extinguishes a first deed of trust. SFR, 334 P.3d at 419. As in SFR, here, after the homeowner and the Bank failed to pay the assessments, the Association foreclosed on its lien for delinquent assessments. In SFR, the Nevada Supreme Court recognized that a foreclosure deed "reciting compliance with notice provisions of NRS 116.31162 through NRS 116.31168 "is conclusive" as to the recitals "against the unit's former owner, his or her heirs and assigns and all other persons." Id. at 411-12 (citing NRS 116.3116.31166(2)). Further, "[i]f the trustee's deed recites that all statutory notice

---

[29] See Sections III(E) and III(F) herein.

requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is **conclusive** as to a bona fide purchaser." Moeller v. Lien, 30 Cal.Rptr.2d 777, 783 (Ct. App. 1994) (emphasis added); see also, 4 Miller & Starr, Cal. Real Estate (3d ed. 2000) Deeds of Trust and Mortgages § 10:211, pp. 647-652; 2 Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 7:59, p. 476-477). This conclusive proof is key because "[t]he conclusive presumption precludes an attack by the trustor on the trustee's sale to a bona fide purchaser **even where the trustee wrongfully rejected a proper tender of reinstatement by the trustor**[,]" and even where "the sale price was only 25 percent of the value of the property. . . ." Moeller, 30 Cal.Rptr.2d at 783 (emphasis added). Put simply, where there were no irregularities in the proceedings of the sale, the sale cannot be set aside. Id. at 784. In Nevada, unlike California, the conclusive proof does not require that the purchaser be a BFP to rely on the recitals. See Pro-Max Corp. v. Feenstra, 16 P.3d 1074, 1077-78 (Nev. 2001), opinion reinstated on reh'g (Jan. 31, 2001) (holding that no limitation of bonafide purchaser can be read into a statute providing a conclusive presumption).[30] There needs to be finality to a foreclosure sale, so that buyers will attend and bid, without the continued threat of lawsuits challenging their title. There is a sanctity and finality to foreclosure sales where the deed contains the conclusive recitals. Cf. Moeller, 30 Cal.Rptr.2d at 784.

Here, the Bank has the burden to overcome the conclusive presumption of the foreclosure deed recitals with evidence of fraud, unfairness and oppression. Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp, Inc., 132 Nev. Adv. Op. 5, 366 P.3d 1105, 1112 (Jan. 28, 2016). This is consistent with the Hon. Philip Pro's holding in Bourne Valley Court Trust v. Wells Fargo Bank, N.A., where he granted summary judgment in favor of a purchaser at an association sale in a similar case. See Bourne Valley, 80 F.Supp.3d 1131 (D.Nev. 2015). When faced with almost identical recitals as those in this case, the Bourne Valley court recognized the recitals in the foreclosure deed, i.e. "that there was a default, the proper notices were given, the appropriate amount of time ha[d] elapsed . . . and notice of the

---

[30] Although, as set forth more fully below, Sec. III(F), SFR is a bonafide purchaser for value.

- 8 -

sale was given," met the burden of showing the required notices were sent to the lender. Id. at 1135. The court continued that the lender was then "required to come forward with evidence that a genuine issue of material fact remains for trial as to notice." Id.

In the instant case, the Bank cannot dispute notice because the Bank fails to bring any evidence that the Association foreclosure notices were not set to it as required by statute. In fact, the Bank fails to assert that the notices were not sent; or, even more, the Bank makes no mention of the notices whatsoever. See Complaint, Dkt #1, 3-5. Additionally, there are no procedural irregularities related to the sale that would explain the Bank's failure to pay the lien. Bourne Valley, 30 F. Supp.3d at 1135. Therefore, ". . . no issue of fact remains as to whether the required statutory notices were provided." Id.

**C.    The Bank, as a Lienholder, is Not Entitled to an Equitable Remedy.**

Undoubtedly, the Bank will argue that the Nevada Supreme Court recently found that while the deed recitals contained in NRS 116.31166 are generally conclusive as to those matters asserted, the court may still set aside a defective foreclosure sale on equitable grounds "when appropriate." Shadow Wood, 366 P.3d at 1112. But Shadow Wood is distinguishable from this case in one key aspect: the bank in Shadow Wood was the homeowner of the Property which the Association foreclosed. Id. at 1107. In other words, it was the *homeowner* who challenged the validity of the sale, not a lienholder. A homeowner has a whole bundle of rights that accompany property ownership and, therefore, its property is unique and a homeowner can be entitled to equity. Unlike a homeowner, the Bank simply had a collateral interest in the Property, which gave it the right to foreclose. As such, the Bank's remedy at law, if one exists, is money damages. Munger v. Moore, 89 Cal.Rptr. 323 (Ct. App. 1970). It is well-settled that in Nevada, district courts lack authority to grant equitable relief when an adequate remedy at law exists. Las Vegas Valley Water Dist. V. Curtis Park Manor Water Users Ass'n, 98 Nev. 275, 277, 646 P.2d 549, 551 (1982). Because the Bank has an adequate remedy at law should they be able to prove some irregularity with the sale, equitable relief is not available to the Bank.

To the extent the Bank suggests that taking title subject to the first deed of trust is an option, the statute does not provide such an option. Unless the Bank can demonstrate actual

- 9 -

fraud, unfairness, or oppression **by the purchaser** at the publically advertised and held auction, the purchaser should not be subject to any acts that would set aside its unencumbered deed.

### D. SFR is Entitled to Summary Judgment on the Bank's Claim for Quiet Title because the Non-Judicial Foreclosure Sale Vested Title in SFR Without Equity or Right of Redemption.

The association foreclosure sale vested title SFR "without equity or right of redemption."[31]  SFR, 334 P.3d at 419 (citing NRS 116.31166(3)).  As the dissent in SFR explained, "the owner, as well as the first security, will have no right to redeem the property under the majority's holding." Id. citing NRS 116.31166(3) and Bldg. Energetix Corp. v. EHE, LP, 294 P.3d 1228, 1233 (Nev. 2013) (recognizing that there is no right to redeem after a Chapter 107 non-judicial foreclosure sale because a sale under that chapter 'vests in the purchaser the title of the grantor and any successors in interest without equity or right of redemption" (quoting NRS 107.080(5)).

This is consistent with long-standing Nevada non-judicial foreclosure law that "[i]f the sale is properly, lawfully and fairly carried out, [the bank] cannot unilaterally create a right of redemption in [itself]." Golden v. Tomiyasu, 387 P.2d 989, 997 (Nev. 1963).  Nevada law does not allow the Bank or the Court to create a redemption period to save the holder of the first deed of trust from its own failure to protect its interest.  As such, SFR is entitled to a declaration from this Court that the first deed of trust was extinguished by the Association foreclosure sale, and SFR should have title quieted solely in its name.

---

[31] According to the Nevada Supreme Court,

> **sales without equity or right of redemption vest the purchaser with absolute title**:
>
> [T]he law authorizing the mortgagee to sell is, in our opinion, so thoroughly settled that it cannot now admit of a question. Such being the right of the mortgagee, it follows as a necessary consequence that the purchaser from him obtains an absolute legal title as complete, perfect and indefeasible as can exist or be acquired by purchase; and a sale, upon due notice to the mortgagor, whether at public or private sale, forecloses all equity of redemption as completely as a decree of court.

In re Grant, 303 B.R. 205, 209 (Bankr. D. Nev. 2003) (quoting Bryant v. Carson River Lumbering Co., 3 Nev. 313, 317–18 (1867)) (emphasis added).

- 10 -

**E.  SFR is Entitled to Summary Judgment on the Bank's Remaining Claims because the Foreclosure Sale Was Commercially Reasonable.**

In seeking relief from the Court, the Bank relies solely on its remaining claim that the bid price at the Association's foreclosure sale was commercially unreasonable to support the Bank's position that its lien remains in first position.  Such reliance is inappropriate for a litany of reasons.

First, there is no requirement in NRS 116.3116 through 116.31168 that the foreclosure sale price be commercially reasonable.  The Nevada Supreme Court has held when interpreting a statute: "where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." Pro-Max, 16 P.3d at 1077 (interpreting NRS §106.240).  In Pro-Max, the district court read the statute as providing protection for bona fide purchasers.[32]  The Nevada Supreme Court held that the statute was clear and unambiguous and the addition of a requirement of bona fide purchaser status before the application of the statute was an improper limitation.  The court stated that at the time of the statute's enactment the legislature could have added language limiting the application of the statute to bona fide purchaser, but it did not.  Thus, the Nevada Supreme Court held that there could be no addition to the statute of a bona fide purchaser requirement.  Id. at 1078.  NRS §116.31164 and §116.31166 are clear and unambiguous.  Neither contain a requirement that the sale be "commercially reasonable" nor that the purchaser at the sale satisfy the requirements of a "bona fide purchaser."

Second, a commercial reasonableness analysis does not mean simply comparing the price paid to value.  As is clearly established by Nevada law and reaffirmed by the Nevada Supreme Court, an allegation of inadequate sales price alone is insufficient to set aside a foreclosure sale: "there must also be a showing of fraud, unfairness, or oppression." Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp, Inc., 132 Nev. Adv. Op. 5, 366 P.3d 1105, 1110 (Jan. 28, 2016)(citing Long v. Towne, 98 Nev. 11, 13, 639 P.2d 528, 530 (1982)); see Golden v. Tomiyasu, 79 Nev. 503, 504, 514, 387 P.2d 989, 995 (1964) (adopting the California

---

[32] As discussed in Section III(C) below, SFR is a BFP.

rule that " inadequacy of price, **however gross**, is not in itself a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness or oppression **as accounts for and brings about the inadequacy of price**" (internal citations omitted) (emphasis added); see Bourne Valley, 80 F.Supp.3d at 1136.  A panel of the Nevada Supreme Court, post Shadow Wood, reaffirmed its reaffirmance of this existing law, stating in an unpublished order that "this court's reaffirmation in [Shadow Wood], that a low sales price in not a basis for voiding a foreclosure sale absent 'fraud, unfairness, or oppression. . . ." Centeno v. JPMorgan Chase Bank, N.A., Case No. 67365 (Nev. Mar. 18, 2016) (unpublished Order Vacating and Remanding a denial of preliminary injunction based in part on the district court's determination that, based on price alone, the sale was commercially unreasonable).[33]  Here, there are no allegations of fraud, oppression or unfairness.  Moreover, no evidence has been presented regarding the value of the Property at the time of the Association's foreclosure sale.  Instead, the Bank relies solely on the original loan amount and compares that figure to the price paid by SFR at the auction, and then claims it is automatically commercially unreasonable. See Complaint, Dkt. 1, 3:25-26, 4:1-3.  The Bank's allegation is wrong as a matter of law. As stated above, price alone does not equate to commercial unreasonableness, there must be more.

Even if some purported valuation was present, market value has no applicability to a forced sale situation. Bourne Valley, at 1136; BFP v. Resolution Trust Corporation, 512 U.S. 1247 (1994).  As the Bourne Valley Court recognized, when assessing commercial reasonableness of an association sale, the material facts affecting the specific market at that time must be considered, including the split in the courts as to the interpretation of NRS 116.3116(2), and whether there was evidence of fraud, oppression or unfairness:

---

[33] Available at http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=35567, as Doc. 16-08672. In that case, the price paid at the homeowners association's auction was $5,950.00. While the district court did not establish a value for the property, on appeal the Bank argued that that the deed of trust secured a loan for $160,001.00 and the property later reverted to the Bank at its own auction for $145,550.00. (See Case No. 67365, Response to Appellant's Pro se Appeal Statement, filed Feb. 17, 2016, available at http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=35567, as Doc. 16-04982. Thus, the price paid at the association's foreclosure sale in Centeno was approximately 4% of the credit bid by the Bank at its subsequent auction.

- 12 -

> The commercial reasonableness here must be assessed as of the time the sale occurred. Wells Fargo's argument that the HOA foreclosure sale was commercially unreasonable due to the discrepancy between the sale price and the assessed value of the property ignores the practical reality that confronted the purchaser at the sale. Before the Nevada Supreme Court issued <u>SFR Investments</u>, purchasing property at an HOA foreclosure sale was a risky investment, akin to purchasing a lawsuit. Nevada state trial courts and decisions from the United States District Court for the District of Nevada were divided on the issue of whether HOA liens are true priority liens such that their foreclosure extinguishes the first deed of trust on the property. <u>SFR Investments</u>, 334 P.3d at 412. Thus, a purchaser at an HOA foreclosure sale risked purchasing merely a possessory interest in the property subject to the first deed of trust. This risk is illustrated by the fact that title insurance companies refused to issue title insurance policies on titles received from foreclosures of HOA super priority liens absent a court order quieting title. (Mot. to Remand to State Court (Doc. #6, Decl. of Ron Bloecker.) Given these risks, a large discrepancy between the purchase price a buyer would be willing to pay and the assessed value of the property is to be expected.

<u>Bourne Valley</u>, at 1136.

Likewise, in <u>BFP</u>, the United States Supreme Court was analyzing whether the price received at a mortgage foreclosure sale was less than "reasonably equivalent value" under the bankruptcy code. Similar to the arguments made by the Bank in this case, the Chapter 11 debtor in <u>BFP</u> argued that because the property sold for a fraction of its fair market value, the price paid was not reasonable. The Court held that "a 'reasonably equivalent value' for foreclosed real property is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." <u>BFP</u>, 511 U.S. at 545. The Court explained that in a forced sale situation, "fair market value cannot—or at least cannot always—be the benchmark[]' used to determine reasonably equivalent value. <u>Id.</u> at 537. This is so because the market conditions that generally lead to "fair market value" do not exists in the forced sale context, where sales take place with significant restrictions:

> [M]arket value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very antithesis of forced-sale value. 'The market value of ... a piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular ... piece of property.' In short, 'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale.

<u>Id.</u> at 537-538, <u>quoting</u> Black's Law Dictionary 971 (6th ed. 1990).

- 13 -

The Court recognized that property sold in a forced-sale context i.e. a foreclosure, "is simply worth less [because] [n]o one would pay as much to own such property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques." Id. at 539. As the Court further noted,

> **Unlike** most other legal restrictions, however, foreclosure has the effect of completely redefining the market in which the property is offered for sale; normal free-market rules of exchange are replaced by the far more restrictive rules governing forced sales. Given this altered reality, and the concomitant inutility of the normal tool for determining what property is worth (fair market value), the only legitimate evidence of the property's value at the time it is sold is the foreclosure-sale price itself.

Id. at 548-549 (emphasis in original).

While the BFP analysis related to a mortgage foreclosure sale, other Courts have extended the BFP analysis to tax-defaulted sales of real property with adherence to requirements of state law. See In re Tracht Gut, LLC, 503 B.R. 804, 815-818 (9th Cir. B.A.P. 2014); T.F. Stone v. Harper, 72 F.3d 466 (5th Cir. 1995); Kojima v. Grandote Int'l Ltd. Co, 252 F.3d 1146 (10th Cir. 2001). Regardless of the type of sale, however, the analysis still aptly explains how market value cannot be compared to a forced sale transaction. Interestingly, in this case, the Bank did not even provide a purported valuation of the Property at the time of the Association's foreclosure sale. Rather, the Bank relies only on the original loan amount set forth in the relevant 2008 deed of trust for valuation purposes, an amount that has no relation to the actual value of a property after the real estate bubble burst. Cf. Shadow Wood, 316 P. 3d at 1113, n.3 (recognizing that value on a recent appraisal is not necessarily indicative of value on day of foreclosure sale).

In similar cases, the Ninth Circuit Court of Appeals rejected arguments by lenders that motions to dismiss could be affirmed on the basis of commercial unreasonableness,[34] because "'inadequacy of price, however gross, is not in itself a sufficient ground' for setting aside a sale without "proof of some element of fraud, unfairness or oppression'" causing the low price, which the bank had not identified. LVDG Series 125 v. Welles, No. 14-15859 at ¶ 3 (Memorandum

---

[34] These were pre-SFR cases that had been dismissed on an incorrect interpretation of NRS 116.3116, wherein the district courts had determined that an association sale could not extinguish a first deed of trust.

- 14 -

order of reversal and remand) (9th Cir. Aug. 27, 2015) (quoting <u>Brunzell v. Woodbury</u>, 449 P.2d 158, 159 (Nev. 1969) (internal citations omitted) [35]; see also <u>Kal-Mor-USA, LLC v. Bank of America, N.A.</u>, No. 13-16591 at ¶ 2 (Memorandum order of reversal and remand) (9th Cir. August 27, 2015) (same). [36]

In the present case, the Bank has not provided any evidence of unfairness, oppression, or fraud, or any other reason that would allow this Court to find the sale commercially unreasonably, let alone set aside the sale. Moreover, by failing to present any evidence of the property's value at the time of the Association's foreclosure, the Bank has not even demonstrated an inadequacy in price relating to the sale.

As the *Bourne Valley* court noted, an association is not required to do more than sell the Property to the highest bidder to protect the lender's interests. *See Bourne Valley,* 2015 WL 301063, at *5 (*citing Carmen v. S.F. Unified Sch. Dist.*, 237 1026, 1028-31 (9th Cir. 2001) (a court need to "comb the record" looking for genuine issues of material fact not cited by the parties). The court noted that the lender had not pointed to any evidence of fraud or any other irregularities in the conduct of the sale that would require it to void the sale. *Id.*  The court found no evidence that the association acted in bad faith for selling the property for the amount of the unpaid assessments. *Id.* Finally, the court noted that there was no legal authority "indicating that beyond selling the property to the highest bidder, the HOA was responsible for protecting" the lender's interests. *Id.* (*citing Carmen,* 237 F.3d at 1028-31 (9th Cir. 2001) (a court need not look for a genuine issue of material fact that the party has not brought to the court's attention)). Thus, the court concluded that no genuine issue of material fact remained as to the commercial reasonableness of the sale. *Id.* The same analysis applies to the instant case.  Here, as stated in the Foreclosure Deed, the Association's sale was publically noticed, as required by statute; multiple bidders attended the auction; it is undisputed that neither the homeowner nor the Bank paid an amount to cure the lien before the sale.  Furthermore, the Association's compliance with

---

[35] <u>Available</u> at http://cdn.ca9.uscourts.gov/datastore/memoranda/2015/08/27/14-15859.pdf

[36] <u>Available</u> at http://cdn.ca9.uscourts.gov/datastore/memoranda/2015/08/27/13-16591.pdf

notice is not in question. In sum, viewing the transaction as a whole, the sale was commercially reasonable, and summary judgment should therefore be granted in favor of SFR.

### F. While Not Required, Even if there were Irregularities with the Sale, these Cannot be Imputed to SFR Because SFR is a Bona Fide Purchaser.

Nevada law does not require that SFR be a bona fide purchaser, and therefore even if there were any irregularities with the Association sale, as long as SFR did not participate in causing the irregularities, they cannot be imputed to SFR. However, in this case, SFR is a bona fide purchaser. A BFP purchases real property: (i) for value; and (ii) without notice of a competing or superior interest in the same property. Berge v. Fredericks, 591 P.2d 246, 247 (Nev. 1979). A "purchaser for value" is one who has given "valuable consideration" as opposed to receiving the property as a gift. Id. at 248; Allen v. Webb, 485 P.2d 677, 680 (Nev. 1971) ("A specific finding of what the consideration was may be implied from the record."). Even if a purchaser may purchase a property for lower than the property's value on the open market, the fact that SFR paid "valuable consideration" is undisputed. Shadow Wood, 366 P.3d at 1115 (citing Fair v. Howard, 6 Nev. 304, 308 (1871) ("the question is not whether the consideration is adequate, but whether it is valuable"); see also Poole v. Watts, 139 Wash, App. 1018 (2007) (unpublished disposition) (stating that the fact that the foreclosure sale purchaser purchased the property for a "low price" did not in itself put the purchaser on notice that anything was amiss with the sale).) Further, notice by a potential purchaser that an association is conducting a sale pursuant to NRS 116, and that the potential exists for challenges to the sale "post hoc[,]" do not preclude that purchaser from BFP status. Shadow Wood, 366 P.3d at 1116. As has been established, finality in foreclosure sales to bona fide purchasers is a must to avoid chilled bidding. Moeller v. Lien, 30 Cal.Rptr.2d 777, 784 (Ct. App. 1994). These continued attacks by the lenders on the association sales causes the very issues with price that the lenders then complain of in their attacks on commercial reasonableness. See Sec. B, supra.

In the present case, SFR paid valuable consideration for the Property at the foreclosure sale. At the time of the sale, SFR had no notice of a competing or superior interest in the Property where the public records showed only that a deed of trust was recorded after the

- 16 -

Association perfected its lien by recording its declaration of CC&Rs, that there was a delinquency by the homeowner, which resulted in the Association instituting foreclosure proceedings and after complying with NRS Chapter 116, sold the Property at a public auction. Between the date of the Notice of Sale was recorded (July 16, 2013), and the date SFR purchased the Property (September 13, 2013), the Bank never recorded a lis pendens or other document alleging any problems with the foreclosure process or the foreclosure sale. Ex. 2, ¶¶ 16.

Additionally, SFR has no relationship with the Association or Nevada Association Services, except as a purchaser of Property. Ex. 2, ¶¶ 14, 15. Therefore, nothing known to the Association or Nevada Association Services about any purported irregularities in the foreclosure process could be deemed known by SFR. Nevertheless, the Bank has not alleged any facts or introduced admissible evidence that SFR had any knowledge precluding it from BFP status, other than an impotent deed of trust.

Even if the Bank could present some credible evidence that SFR somehow knew that the Bank's interest was superior for some reason other than its faulty interpretation of the NRS Chapter 116, the Bank would still have to prove that SFR was not a BFP and that SFR somehow induced the Association to fraudulently sell the Property to it. Bailey v. Butner, 176 P.2d 226, 229-230 (Nev. 1947). There is absolutely no evidence of fraud, and therefore SFR is entitled to summary judgment.

Thus, if this court is inclined to weigh equities, which it should not, it "must consider the entirety of the circumstances that bear upon the equities." Shadow Wood, 366 P.3d at 1114. These would include not only any irregularities in the sale process by the Association or Nevada Association Services, but the actions or (in)actions by the Bank and SFR's BFP status. Id. at 1114. As the Shadow Wood court noted, "[c]onsideration of harm to potentially innocent third parties is especially pertinent here where [the Bank] did not use the legal remedies available to it to prevent the property from being sold to a third party. . . ." Id. at 1115 n.7. Additionally, it is presumed that "a person intends the ordinary consequences of that person's voluntary act." NRS 47.250(2).

Here, the Bank failed to bring any evidence that the Association foreclosure notices were

not sent to it as required by statute. In fact, the Bank fails to assert that the notices were not sent and makes no mention of the notices whatsoever. See Complaint, Dkt #1, 3-5. The Bank did not pay the lien, contact the Association or Nevada Association Services prior to the sale, contact the Ombudsman, file a lis pendens, attend the sale, or seek judicial intervention to enjoin the sale. The Bank knew that without taking action to stop the sale, the Association's foreclosure would extinguish all junior interests in the Property. By allowing the sale to go forward, the Bank must have intended this consequence. On the other hand, SFR merely attended a publically noticed, publically held foreclosure sale, and placed the winning bid at the auction. The Bank is seeking yet another bail out for its poor business decisions.

The equities lie in favor of SFR and title should be quieted in SFR's name and the Bank enjoined from taking any further action to enforce its extinguished lien against the Property or further clouding SFR's title.

### IV. CONCLUSION

Based on the above, the Court should enter summary judgment in favor of SFR, stating that the Association's foreclosure sale was commercially reasonable, SFR is the title holder of the Property, and that Five Star's deed of trust was extinguished when the Association foreclosed its lien containing super priority amounts, thus making the Bank's purported interest in the first deed of trust invalid.

DATED the 13th day of April, 2016

**KIM GILBERT EBRON**

*/s/Diana Cline Ebron*
DIANA CLINE EBRON, ESQ.
Nevada Bar No. 10580
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
*Attorneys for SFR Investments Pool 1, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of April 2016, pursuant to FRCP 5, I served via the CM/ECF filing system the foregoing Motion to the following parties:

Gregory L. Wilde, Esq.
Kevin S. Soderstrom, Esq.
TIFFANY & BOSCO P.A.
212 South Jones Blvd.
Las Vegas, NV 89107
(702) 258-8200
Fax: (702) 258-8787
Email: efilenv@tblaw.com
*Attorney for U.S. Bank, National Association*

Kevin S. Soderstrom, Esq.
WILDE & ASSOCIATES
212 S. Jones Boulevard
Las Vegas, NV 89107
(702) 258-8200
Fax: (702) 258-8787
Email: feddc@wildelaw.com
*Attorney for U.S. Bank, National Association*

                     */s/ Chantel Schimming*
                     an Employee of Kim Gilbert Ebron