GREGORY L. WILDE, ESQ.
Nevada Bar No. 4417
KEVIN S. SODERSTROM, ESQ.
Nevada Bar No. 10235
**TIFFANY & BOSCO, P.A.**
212 South Jones Blvd.
Las Vegas, Nevada 89107
(702) 258-8200
Attorney for Plaintiff

TB #14-73163

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>SFR INVESTMENTS POOL 1, LLC, a<br>Nevada Limited Liability Company; DOES 1<br>through 10; and ROE BUSINESS ENTITIES<br>1 through 10, inclusive,<br><br>Defendants. | Case No.:  2:15-cv-00287-APG-GWF |

**OPPOSITION TO SFR INVESTMENTS POOL 1, LLCS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff U.S. Bank, National Association (hereinafter "US Bank" or the "Plaintiff"), by and through its counsel of record, Gregory L. Wilde, Esq. of Tiffany & Bosco, P.A., and opposes SFR Investments Pool 1, LLC's (hereinafter "SFR" or the "Defendant") Motion for Summary Judgment (hereinafter the "Motion for Summary Judgment") (Doc. #32).

///

///

///

///

///

- 1 -

This Opposition is made and based upon the papers and pleadings on file herein, the Memorandum of Points and Authorities, the attached documents, and any other additional information or oral argument as may be requested by the Court.

DATED this 9th day of May, 2016.

**TIFFANY & BOSCO, P.A.**

/s/ Kevin S. Soderstrom
_____
GREGORY L. WILDE, Esq.
Nevada Bar No.: 4417
KEVIN S. SODERSTROM, ESQ.
Nevada Bar No. 10235
212 South Jones Blvd.
Las Vegas, Nevada 89107
Attorney for Plaintiff

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**LEGAL ARGUMENT**

**A.      STATEMENT OF UNDISPUTED MATERIAL FACTS**

By way of assignment, US Bank is the beneficiary of a deed of trust recorded against the real property commonly known as 9574 Bouncing Ball Street, Las Vegas, Nevada, Assessor's Parcel Number 176-20-418-004 (hereinafter the "Subject Property"), which secures a FHA loan in the original amount of $167,785.00.  Attached hereto as Exhibits "1" and "2" are true and correct copies of the deed of trust and the assignment thereof to US Bank, recorded with the Clark County Recorder on November 17, 2008 and March 25, 2013, respectively.  Pursuant to FRE 201 and *Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741* (9th Cir. 2006), courts may take judicial notice of publicly recorded documents. (Doc. 10)  As the deed of trust and

TIFFANY & BOSCO, P.A.
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

assignment are publicly recorded documents, the Court can take judicial notice these documents.

The Defendant claims an ownership interest in the Subject Property through a foreclosure deed recorded with the Clark County Recorder on September 24, 2013. A true and correct copy of the foreclosure deed is attached hereto as Exhibit "3." The foreclosure deed states that the homeowners association (hereinafter the "HOA") foreclosure sale was conducted pursuant to NRS 116 on September 13, 2013 in relation to a lien for delinquent assessments recorded on November 8, 2012. The foreclosure deed states that the Defendant paid a mere $12,000.00 at the foreclosure sale. The Court may also take judicial notice of the publicly recorded foreclosure deed.

**B.    THE DEFENDANT HAS FAILED TO DEMONSTRATE THAT THE LAW SUPPORTS THE DEFENDANT'S POSITION AND THAT NO GENUINE ISSUES OF MATERIAL FACT REMAIN**

**1.    Although the Court Has Entered An Order Addressing Several Issues Previously Argued by the Parties In This Action, US Bank Incorporates By Reference Herein Its Prior Arguments Regarding Those Issues**

On June 4, 2015, the Defendant filed a Motion to Dismiss. (Doc. #9). On June 22, 2015, US Bank filed its Opposition to the Defendant's Motion to Dismiss as well as a Countermotion for Summary Judgment. (Doc. #11 and #12). On July 16, 2015, the Defendant filed its Reply in support of its Motion to Dismiss and its Opposition to US Bank's Countermotion for Summary Judgment. (Doc. #16 and #17). On August 3, 2015, US Bank filed its Reply in support of its Countermotion for Summary Judgment. (Doc. #20). On March 28, 2016, the Court entered an Order granting the Defendant's Motion to Dismiss in part and denying US Bank's Countermotion for Summary Judgment. (Doc. #31).

**TIFFANY & BOSCO, P.A.**
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

In its March 28, 2016, the Court Order, the Court ruled in favor of the Defendant with respect to various constitutional arguments which were raised in the Motion to Dismiss and the Countermotion for Summary Judgment.  Although the Court did not grant US Bank's Countermotion for Summary Judgment, the Court denied the Defendant's Motion to Dismiss with respect to the issue of commercial reasonableness.  For purposes of brevity and to ensure that its rights are preserved in the event of an appeal, US Bank's incorporates by reference herein all of the points and authorities set forth in its Opposition to the Defendant's Motion to Dismiss and Countermotion for Summary Judgment (Doc. #11 and #12) and its Reply in support of its Countermotion for Summary Judgment (Doc. #20).

### 2. The Defendant's Contention That US Bank's Deed of Trust Was Extinguished by the HOA Lien Foreclosure Sale Is Not Well-Supported

In its Motion for Summary Judgment, the Defendant has implicitly taken the position that the 2013 HOA foreclosure sale had the effect of extinguishing US Bank's deed of trust.  US Bank has taken the opposite position, and the facts of this case and applicable law support US Bank's position.

### a. The *SFR* Decision From the Nevada Supreme Court Did Not Resolve All Issues Pertaining to NRS 116

In its Motion for Summary Judgment, the Defendant has cited the decision of the Nevada Supreme Court *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (2014) in support of its argument. *Motion for Summary Judgment*, 6:21-27, 7:19-27.  However, the *SFR* decision is not absolute and not all sales conducted under NRS 116.3116 abrogate a lender's previously recorded deed of trust.

The Court can take judicial notice that the *SFR* case went before the Nevada Supreme Court after SFR's Complaint had been dismissed and that the case was remanded back to the

lower court for various factual determinations.  Those determinations include, but are not limited to, consideration of the following:

- Whether  the sale was properly conducted;

- Whether  the sale was commercially reasonable; and

- Whether any party tendered the alleged arrears.

Additionally, the Nevada Supreme Court conditioned the effect of a HOA super-priority lien sale on a first position deed of trust stating the following in *SFR*:

> "NRS 116.3116(2) gives an HOA true superpriority lien, ***proper foreclosure of which*** will extinguish a first deed of trust." (Emphasis added.) *Id*. at 5:2-3.

It is clear that any HOA lien foreclosure sale must be conducted properly prior to extinguishing a first position deed of trust.

NRS 116.31166 further conditions the effect of a HOA super-priority lien sale on a first position deed of trust.  After this statute discusses the effect of certain recitals in a deed, it provides the following clarification:

> "**3. The sale of a unit *pursuant to* NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.**" (Emphasis added.) NRS 116.3116(3).

It is clear that, as a matter of law, the effect of a HOA lien foreclosure sale on a first position deed of trust is not absolute and can be contested.  A HOA lien foreclosure sale must be conducted "properly" and "pursuant to" NRS 116.31162, 116.31163, and 116.31164 before it could possibly abrogate a first position deed of trust.

### b.  The *SFR* Decision Should Not Be Applied Retroactively

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349 (1971), *abrogated in part by Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993), the United States Supreme Court recognized limitations on the retroactive application of judicial rulings as a matter of common

TIFFANY & BOSCO, P.A.
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

law equity.  The Court identified certain factors to be considered in determining whether a rule

of law should be applied by a court only prospectively, stating the following:

> "In our cases dealing with the nonretroactivity question, we have generally considered three separate factors.  First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., supra, 392 U.S., at 496, 88 S.Ct., at 2233, or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., Allen v. State Board of Elections, supra, 393 U.S., at 572, 89 S.Ct., at 835.  Second, it has been stressed that 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Linkletter v. Walker, supra, 381 U.S., at 629, 85 S.Ct., at 1738.  Finally, we have weighed the inequity imposed by retroactive application, for '(w)here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity.' Cipriano v. City of Houma, supra, 395 U.S., at 706, 89 S.Ct., at 1900." *Id.* at 106-07, 355.

In the present case, the first factor weighs heavily against retroactive application of the

*SFR* decision.  It is widely known that the various trial courts had not and could not come to any

consensus regarding the effect, if any, of a HOA lien foreclosure sale on a first-position deed of

trust.  At best, the *SFR* decision decided an issue of first impression whose resolution was not

clearly foreshadowed.

The second factor also weighs in favor of nonretroactivity.  Applying the *SFR* decision

retroactively would not promote the purpose of the rule, as it does not appear that nonretroactive

application would have any significant impact on the ability of HOAs to recover the full amount

of the debts they are claiming to be owed.

The third factor also favors nonretroactivity.  The extinguishment of a first position deed

of trust through foreclosure of a relatively small HOA lien would be highly inequitable,

especially considering the lack of any prior notice to the Plaintiff (and other secured lenders in

general) of any super-priority lien status.

The sale at issue in the instant matter was held on September 13, 2013 – *more than a year prior to the issuance of the SFR decision*.  Based on the foregoing, the Plaintiff submits that the *SFR* decision should not be applied retroactively.  Without retroactive application, the *SFR* decision provides no support whatsoever for the Defendant's claim to unencumbered title.[1]

**c.      The HOA Lien Foreclosure Sale Price Was Grossly Inadequate, and the Sale Was Not Free of Fraud, Oppression, and Unfairness**

In *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 132 Nev. Adv. Op. 5 (2016), the Nevada Supreme Court reaffirmed that a defective HOA lien foreclosure sale may be set aside.  Among other things, the Court stated the following in *Shadow Wood*:

> "The appellants are the HOA and the lien foreclosure sale buyer whose trustee's deed the district court set aside.  They argue that NRS 116.31166 (2013), which says that certain recitals in an HOA trustee's sale deed are 'conclusive proof of the matters recited,' renders such deeds unassailable.  **We disagree and reaffirm that, in an appropriate case, a court can grant equitable relief from a defective HOA lien foreclosure sale.** *E.g., Long v. Towne,* **98 Nev. 11, 639 P.2d 528 (1982).**" (Emphasis added.) *Id*. at *1.

The Court also stated the following in *Shadow Wood*:

> **"Shadow Wood and Gogo Way maintain that, under NRS 116.31166, recitals such as these bar any post-sale challenge regardless of basis, whether it disputes the HOA's compliance with the statutory default, notice, and timing requirements or, as here, seeks to set aside the sale for equity-based reasons.  If true, this interpretation would call into question this court's statement in *Long v. Towne,* that a common-interest community**

---

[1]  On April 8, 2016, the Nevada Supreme Court entered an Order Accepting Certified Question, Directing Briefing and Directing Submission of Filing Fee in *K&P Homes v. Christiana Trust*, Case No. 69966, in which the following question was accepted as certified from the United States District Court for the District of Nevada:  Does the rule of *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) that foreclosures under NRS 116.3116 extinguish first security interests apply retroactively to foreclosures occurring prior to the date of that decision?

- 7 -

**TIFFANY & BOSCO, P.A.**
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

**TIFFANY & BOSCO, P.A.**
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

1  **association's nonjudicial foreclosure sale may be set aside, just as a power-**
2  **of-sale foreclosure sale may be set aside, upon a showing of grossly**
   **inadequate price plus '<u>fraud, unfairness, or oppression.</u>'"** (Emphasis added.)
3  *Id*. at *4.

4                    i.       **The HOA Sale Price Was Not Commercially Reasonable**

5         As stated above, the foreclosure deed states that the Defendant paid a mere $12,000.00

6  at the HOA lien foreclosure sale. *Exhibit "3" attached hereto*.  As explained below, that price

7  was grossly inadequate and the Court is warranted in setting aside the sale.

8         Regarding commercial reasonableness, the Nevada Supreme Court stated the following
9
10 in *Shadow Wood*:

11        "NYCB failed to establish that the foreclosure sale price was grossly inadequate
          as a matter of law.  NYCB compares Gogo Way's purchase price, $11,018.39, to
12        the amount NYCB bought the property for at its foreclosure sale, $45,900.00.
          Even using NYCB's purchase price as a comparator, and adding to that sum the
13        $1,519.29 NYCB admits remained due on the superpriority lien following
          NYCB's foreclosure sale, Gogo Way's purchase price reflects 23 percent of that
14        amount and is therefore not obviously inadequate. *See Golden,* 79 Nev. at 511,
          387 P.2d at 993 (noting that even where a property was 'sold for a smaller
15        proportion of its value than 28.5%,' it did not justify setting aside the sale); *see*
          *also* **Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997) (stating**
16        **that while '[g]ross inadequacy cannot be precisely defined in terms of a**
          **specific percentage of fair market value[, g]enerally ... <u>a court is warranted in</u>**
17        **<u>invalidating a sale where the price is less than 20 percent of fair market value</u>**
18        and, absent other foreclosure defects, is usually not warranted in invalidating a
          sale that yields in excess of that amount')." (Emphasis added.) *Id*. at 1112-13.
19
20        In its Motion for Summary Judgment, the Defendant has argued that "the Bank has not

21 even demonstrated an inadequacy of price because it has not presented any evidence of the
22
23 Property's value at the time of the Association's foreclosure sale." *Motion for Summary*

24 *Judgment*, 2:14-16.  However, the Defendant's argument is unpersuasive.

25        First, the Defendant has overlooked the fact that Nevada is a notice-pleading
26
27 jurisdiction. *See e.g. Hay v. Hay*, 100 Nev. 196, 198, 678 P.2d 672, 675 (1984) (stating that

28 "[b]ecause Nevada is a notice-pleading jurisdiction, our courts liberally construe pleadings to

place into issue matters which are fairly noticed to the adverse party.") The Federal Rules of Civil Procedure do not require that the Plaintiff fully develop its arguments and present all evidence in the Complaint.

Second, for purposes of summary judgment, any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Furthermore, the nonmoving party is not required to produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In the instant matter, US Bank's deed of trust secures a loan in the original amount of $167,785.00. *Exhibit "1" attached hereto.* The Court may take judicial notice of the recorded deed of trust.

Additionally, the Declaration of Value form accompanying the recorded foreclosure deed through which the Plaintiff purportedly acquired title to the Subject Property lists a property value at the time of sale of $122,294. *Exhibit "3" attached hereto.*

For purposes of analyzing the Defendant's Motion for Summary Judgment, all underlying facts and evidence regarding the value of the Subject Property at the time of the HOA lien foreclosure sale must be viewed in favor of US Bank. Even assuming that the value of the Subject Property at the time of the foreclosure sale was only $122,294, the Defendant's purchase price would only amount to a mere 9.81% of the value of the Subject Property, which is approximately half of the 20% threshold adopted by the Nevada Supreme Court in *Shadow Wood*. Therefore, on the issue of commercial reasonableness, the Defendant has failed to demonstrate that the sale was commercially reasonable and that no genuine issue of material fact remains.

### ii.    The HOA Lien Foreclosure Sale Was Not Free of Fraud, Oppression, and Unfairness

There are a number of indications that the HOA lien foreclosure sale at issue in this case was not free from fraud, oppression, and unfairness.  For instance, the HOA's agent improperly included collection costs as debt purportedly secured by the Subject Property.  In *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 132 Nev. Adv. Op. 35 (2016), the Nevada Supreme Court made it clear that a HOA's lien does not cover "costs of collecting," stating the following:

"Among the questions NRED was asked, to address concerning NRS 116 .3116 in its December 2012 opinion was whether 'the portion of the association's lien which is superior to a unit's first security interest (referred to as the 'super priority lien') contain[s] 'costs of collecting' defined by NRS 116.310313 [.]' 13–01 Op. NRED 1 (2012).  **NRED answered this question in the negative and initially stated that**

**[t]he association's lien does not include 'costs of collecting' defined by NRS 116.310313, so the super priority portion of the lien may not include such costs.** NRS 116.310313 does not say such charges are a lien on the unit, and NRS 116.3116 does not make such charges part of the association's lien.

*Id.* After conducting a thorough analysis of the legislative history behind NRS 116.3116, NRED concluded the 'Legislature's actions in the 2009 and 2011 sessions are indicative of its intent not to make costs of collecting part of the lien,' and thus, 'the association's lien does not include 'costs of collecting' as defined by NRS 116.310313.' *Id.* at 7.  **We find NRED's interpretation of NRS 116.3116, including its legislative history analysis, persuasive.**" (Emphasis added.) *Id.* at *5.

To the extent that the HOA's agent took the Subject Property to sale based on a lien purportedly securing costs of collecting, the actions of the HOA's agent were fraudulent, oppressive, and unfair.

Attached hereto as Exhibit "4" is a copy of an accounting of "Assessments, Late Fees, Interest, Attorneys Fees & Collection Costs" prepared by the HOA's collection agent in relation

**TIFFANY & BOSCO, P.A.**
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

to the sale at issue in this case.  That accounting, which states that it is for the period from June 1, 2012 through September 13, 2013, lists a total debt amount of $3,454.94 and includes several items which are collection costs.  Moreover, the document itself explicitly states that it includes "Collection Costs."  Furthermore, the post-sale disbursement sheet prepared by the HOA's collection agent and the check issued to the HOA show that of the $12,000.00 amount obtained at the HOA lien foreclosure sale, only $792.00 actually went to the HOA. *Exhibits "5" and "6" attached hereto*.  It is indisputable that the HOA's agent improperly took the Subject Property to sale on based on a lien purportedly securing costs of collecting, and such conduct was fraudulent, oppressive, and unfair.

Additionally, it would also be oppressive and unfair, if not also fraudulent, to treat the sale of the Subject Property as free and clear of US Bank's deed of trust when the HOA's collection agent did not treat US Bank as a junior lienholder when it made its post-sale disbursement of excess sale proceeds.  Attached hereto as Exhibit "5" is a true and correct copy of the HOA's collection agent's "Disbursement Requisition" showing a disbursement in the amount of $6,924.46 to the former owner.  Attached hereto as Exhibit "7" is a true and correct copy of the surplus funds check sent by the HOA's collection agent to the former owner.  No disbursement was made to US Bank.[2]

///

///

_____

[2] To be clear, US Bank is not requesting or demanding a disbursement of excess proceeds to it. Rather, these pertinent facts are being brought to the Court's attention as clear evidence that the HOA's foreclosing agent did not consider or treat US Bank's deed of trust as inferior to the HOA's lien, but rather as an senior lien unaffected by the HOA foreclosure sale.

**TIFFANY & BOSCO, P.A.**
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TIFFANY & BOSCO, P.A.**
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

Viewing all inferences to be drawn from the underlying facts in the light most favorable to US Bank, it cannot be said that the HOA lien foreclosure sale was free of fraud, oppression, and unfairness.

### 3.    Equitable Relief is Available to US Bank

The Defendant has argued that the Court may not grant the equitable remedy of setting aside the HOA lien foreclosure sale because US Bank was merely a lienholder rather than the owner of the Subject Property at the time of the sale. *Motion for Summary Judgment*, 9:11-21. The Defendant has argued that "[a]s such, the Bank's remedy at law, if one exists, is money damages. <u>Munger v. Moore</u>, 89 Cal.Rptr. 323 (Ct. App. 1970)." *Motion for Summary Judgment*, 9:21-22.

The Defendant's reliance on *Munger* is misplaced for at least two reasons.  First, *Munger* is from another jurisdiction and is not a statement of Nevada law.  Second, *Munger* contains no such holding.  In fact, the *Munger* decision does not even contain the words "remedy" or "money damages."

The Defendant has also alleged that US Bank has an adequate remedy at law.  However, the Defendant has failed to explain how that is the case.  To the extent that the Defendant is suggesting that any residual funds from the $12,000.00 sale price would be "adequate" to compensate US Bank for the loss of its deed of trust – which secures a loan in the original amount of $167,785.00 – such an argument is unreasonable.  At a minimum, a genuine issue of material fact would exist to preclude summary judgment in favor of the Defendant.

///

///

///

- 12 -

**TIFFANY & BOSCO, P.A.**
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4.   The Defendant Has Conflated the Issue of Redemption With the Issue of Whether the Defendant Acquired Title Free of US Bank's Deed of Trust

The Defendant has argued that it is entitled to summary judgment in its favor because the HOA lien foreclosure sale vested title in the Defendant without equity or right of redemption. *Motion for Summary Judgment*, 10:3-5.  In making that argument, the Defendant has conflated two distinct concepts, only one of which has relevance.  The Defendant has improperly conflated sales without equity or right of redemption by prior owners with sales free and clear of all liens.  The two concepts are distinct, and the issue before the Court is not whether the former owner has any right of redemption.  Rather, the issue before the Court is whether the HOA lien foreclosure sale was proper and had any effect on the Plaintiff's deed of trust.

### 5.   The Defendant Cannot Claim Bona Fide Purchaser Status

The Defendant has argued that it should be considered a bona fide purchaser even if there were irregularities in the HOA lien foreclosure. *Motion for Summary Judgment*, 16:3-4.  In support of its argument, the Defendant has relied on *Shadow Wood* in a very misleading way, stating the following:

> "Further, notice by a potential purchaser that an association is conducting a sale pursuant to NRS 116, and that the potential exists for challenges to the sale 'post hoc[,]' do not preclude that purchaser from BFP status. Shadow Wood, 366 P.3d at 1116." *Motion for Summary Judgment*, 16:18-21.

In *Shadow Wood*, the Nevada Supreme Court actually stated the following regarding this issue:

> "As to notice, NYCB submits that 'the simple fact that the HOA trustee is attempting to sell the property, and divest the title owner of its interest, is enough to impart constructive notice onto the purchaser that there may be an adverse claim to title.'  Essentially, then, NYCB would have this court hold that a purchaser at a foreclosure sale can never be bona fide because there is always the

possibility that **the former owner** will challenge the sale post hoc.  The law does not support this contention." (Emphasis added.) *Id*. at *10.

In *Shadow Wood*, the bank was not claiming an interest in real property as a holder of a first position deed of trust.  Instead, the bank actually owned the property at the time of the HOA lien foreclosure sale, so the effect of the sale on a first position deed of trust was not at issue in that case.  In contrast, this case involves a situation in which US Bank held a first position deed of trust at the time of the HOA lien foreclosure sale.

Furthermore, the sale at issue in this case was held on September 13, 2013 – at a time when the Defendant was fully aware of the highly-contested nature of such sales.  In fact, by the time the Defendant purportedly acquired its ownership interest in the Subject Property, the Defendant itself had already initiated multiple civil actions requesting declaratory relief from the courts regarding the effect of a HOA lien foreclosure sale on a first position deed of trust.[3] The Defendant has also acknowledged the fact that the public records included US Bank's recorded deed of trust at the time of the sale. *Motion for Summary Judgment*, 16:26-27.

The Defendant's reliance on *Bailey v. Butner*, 176 P.2d 226 (1947) is also misleading. The Defendant has stated the following:

> "Even if the Bank could present some credible evidence that SFR somehow knew that the Bank's interest was superior for some reason other than its faulty interpretation of the NRS Chapter 116, the Bank would still have to prove that SFR was not a BFP and that SFR somehow induced the Association to fraudulently sell the Property to it. *Bailey v. Butner*, 176 P.2d 226, 229-230 (Nev. 1947).  There is absolutely no evidence of fraud, and therefore SFR is entitled to summary judgment."

---

[3] *See e.g.* case nos. A677269 (*SFR Investments Pool 1, LLC v. U.S. Bank National Association*, filed February 25, 2013) and A677452 (*SFR Investments Pool 1, LLC v. Wells Fargo Bank*, filed February 27, 2013) in the Eighth Judicial District Court of the State of Nevada.

**TIFFANY & BOSCO, P.A.**
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

*Bailey* actually involved a unique set of circumstances and a dispute between a prior equitable vendee (Bailey) and a secondary subsequent purchaser (Rutherford, who had purchased from Hopkins, who had purchased from the Butners). The Nevada Supreme Court stated the following in *Bailey*:

> "As to part of the land involved in the instant case, respondent, Retherford [sic], is not the immediate purchaser from the Butners, but purchased from Hopkins, and, of course, if Hopkins (in a position similar to B in Moore v. Allen, supra) was a bona fide purchaser, respondent, Rutherford, standing in his shoes, could recover the portion of the land purchased from him, even though Rutherford had notice, at the time of his purchase from Hopkins, of the prior equity of Bailey, provided Rutherford was guilty of no fraudulent participation or inducement in connection with the purchase by Hopkins.
>
> Rutherford, however, according to the principle laid down in Independent Coal & Coke Co. v. United States, supra, could not establish superiority of his equity as against Bailey upon the fact, alone, of Hopkins being a bona fide purchaser, but would be required to show, either that he did not know of the Bailey equity *at the time of the Hopkins purchase, or that, if he then knew of it, that he did not induce Hopkins to buy, or, in any manner participate, fraudulently, to induce or encourage the transaction between Bailey and Hopkins*." (Emphasis in original.) *Id*. at 229-30.

The Defendant has acknowledged the fact that the public records included US Bank's recorded deed of trust at the time of the sale. *Motion for Summary Judgment*, 16:26-27. Therefore, the "fraudulent inducement" exception – which was very narrow in scope – is not even applicable in this case.

In light of these facts and circumstances, the Defendant simply cannot claim that it was a bona fide purchaser. Moreover, because US Bank is the non-moving party, all inferences must be viewed in US Bank's favor for purposes of analyzing the Defendant's Motion for Summary Judgment.

///

///

TIFFANY & BOSCO, P.A.
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

**II.**

**CONCLUSION**

Based on the foregoing, US Bank requests that the Defendant's Motion for Summary Judgment be denied in its entirety.

DATED this 9th day of May, 2016.

**TIFFANY & BOSCO, P.A.**


/s/ Kevin S. Soderstrom
_____
GREGORY L. WILDE, Esq.
Nevada Bar No.: 4417
KEVIN S. SODERSTROM, ESQ.
Nevada Bar No. 10235
212 South Jones Blvd.
Las Vegas, Nevada 89107
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of May, 2016 I electronically transmitted the above OPPOSITION TO SFR INVESTMENTS POOL 1, LLCS MOTION FOR SUMMARY JUDGMENT to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

/s/ Jessica Moore
_____
An employee of Tiffany & Bosco, P.A.

**TIFFANY & BOSCO, P.A.**
212 S. Jones Blvd.
Las Vegas, NV 89107
Tel 258-8200 Fax 258-8787

Exhibit "1"

**FIDELITY NATIONAL TITLE**
**NCLPC**

Parcel Number: **176-20-418-004**

RECORDING REQUESTED BY
Name: **Oz Carmi**

RETURN TO
Name: **Five Star Mortgage**
Address: **1020 Wigwam Pkwy**
**Henderson NV, 89074**

*8922403 7 Jk*

I hereby affirm that this document submitted for recording does not contain personal information.

**20081125-0001623**
Fee: $25.00       RPTT: $0.00
N/C Fee: $25.00
11/25/2008       09:26:21
T20080290127
Requestor:
DOCUMENT PROCESSING SOLUTION
Debbie Conway        MGM
Clark County Recorder    Pgs: 12

_____
                                     Name/Title

————————— [Space Above This Line For Recording Data] —————————

# DEED OF TRUST

| FHA CASE NO. |
| --- |
| **332-4743950-703** |

**MIN: 100021268001878574**
**Loan Number:6800187857**

THIS DEED OF TRUST ("Security Instrument") is made on **November 17, 2008** . The grantor is
**JOHN J HUDSON, a single person**

("Borrower"). The trustee is

**FIDELITY NATIONAL TITLE**

("Trustee"). **The beneficiary is**
**Mortgage Electronic Registration Systems, Inc. ("MERS").** MERS is a separate corporation that is acting
solely as nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the
laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS.
**Five Star Mortgage**

("Lender") is organized and existing
under the laws of            **the State of Nevada**                              , and
has an address of **1020 Wigwam Pkwy, Henderson, NV  89074**

. Borrower owes Lender the principal sum of
**One Hundred Sixty Seven Thousand Seven Hundred Eighty Five and no/100**
Dollars (U.S. $**167,785.00**        ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due
and payable on **December 01, 2038**    . The beneficiary of this Security Instrument is MERS (solely as
nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

**NEVADA FHA DEED OF TRUST**                                    **6/96**
**MERS**
ITEM 2695L1                                              GreatDocs™
(0709)                                                  *(Page 1 of 9)*

USB000004

**Loan Number:6800187857**

irrevocably grants and conveys to Trustee, in Trust, with power of sale, the following described property located in **Clark**                                                    County, Nevada:

**SEE ATTACHED LEGAL DESCRIPTION**    See Exhibit "One"

**Parcel ID: 176-20-418-004**

(If the legal description is a metes and bounds description, the name and mailing address of the person who prepared the legal description or if a document including the same legal description has been previously recorded, the information necessary to identify and locate the previous recording is:

**Five Star Mortgage**
**1020 Wigwam Pkwy**

)

which currently has the address of                     **9574 Bouncing Ball Street**
                                                                          [Street]

                    **Las Vegas**                    , Nevada      **89178**           ("Property Address"):
                     [City]                                      [Zip Code]

 TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

 BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

 THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

 1.  **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

 2.  **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum

**NEVADA FHA DEED OF TRUST**
**MERS**
ITEM 2695L2
(0709)

GreatDocs™
*(Page 2 of 9)*

USB000005

**Loan Number:6800187857**

for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

   **3.   Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

   FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

   SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

   THIRD, to interest due under the Note;

   FOURTH, to amortization of the principal of the Note; and

   FIFTH, to late charges due under the Note.

   **4.   Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

   In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged

**NEVADA FHA DEED OF TRUST**
**MERS**
ITEM 2695L3
(0709)

GreatDocs™
*(Page 3 of 9)*

USB000006

Loan Number:6800187857

Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

NEVADA FHA DEED OF TRUST
MERS
ITEM 2695L4
(0709)

GreatDocs™
*(Page 4 of 9)*

USB000007

Loan Number:6800187857

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8.**  **Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9.**  **Grounds for Acceleration of Debt.**

        **(a)**  **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        **(b)**  **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

            (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

        **(c)**  **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

        **(d)**  **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

        **(e)**  **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   **60 DAYS** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to   **60 DAYS**   from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10.**  **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by

**NEVADA FHA DEED OF TRUST**
**MERS**
ITEM 2695L5
(0709)

GreatDocs™
*(Page 5 of 9)*

USB000008

Loan Number:6800187857

Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

**NEVADA FHA DEED OF TRUST**
**MERS**
ITEM 2695L6
(0709)

GreatDocs™
*(Page 6 of 9)*

USB000009

Loan Number:6800187857

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a

NEVADA FHA DEED OF TRUST
**MERS**
ITEM 2695L7
(0709)

GreatDocs™
*(Page 7 of 9)*

USB000010

**Loan Number:6800187857**

foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19.    Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

**20.    Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**21.    Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $

**22.    Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider               ☐ Graduated Payment Rider

☐ Growing Equity Rider            ☒ Planned Unit Development Rider

☐ Adjustable Rate Rider           ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider       ☐ Other [Specify]

**NEVADA FHA DEED OF TRUST**
**MERS**
ITEM 2695L8
(0709)

**Great**Docs™
*(Page 8 of 9)*

USB000011

Loan Number:6800187857

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)       _____ (Seal)
JOHN J HUDSON                    -Borrower                                      -Borrower

_____ (Seal)       _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)       _____ (Seal)
                                 -Borrower                                      -Borrower

State of  **Nevada**
County of **CLARK**

This instrument was acknowledged before me on   **November 17, 2008**   (date) by
**JOHN J HUDSON, a single person**

Notary Public - State of Nevada
County of Clark
SUSAN M. ROTELLA
My Appointment Expires
March 12, 2012
No: 04-87650-1

(name[s] of person[s]).

_____
Notary Public

MAIL TAX STATEMENTS TO

Name:

Address:

**NEVADA FHA DEED OF TRUST**
**MERS**
ITEM 2695L9
(0709)

GreatDocs™
*(Page 9 of 9)*

USB000012

# LEGAL DESCRIPTION

## EXHIBIT "ONE"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE IN THE CITY OF LAS VEGAS, COUNTY OF CLARK, STATE OF NEVADA, AND IS DESCRIBED AS FOLLOWS:

Lot 84 in Block 1 of Storybook Homes -Toyelend Addition Phase III, in the City of Las Vegas, County of Clark,  State of Nevada, as shown on map filed in Book 131, Page 95 of Maps, in the office of the County Recorder of said County and amended by Certificate of Amendment recorded July 12, 2006 in Book 20060712 as Document NO. 1122.

USB000013

# PLANNED UNIT DEVELOPMENT RIDER

| MIN:100021268001878574 | Loan Number:6800187857 |
|---|---|

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **17th** day of **November 2008**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Five Star Mortgage**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**9574 Bouncing Ball Street
Las Vegas, Nevada 89178**
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**TOYLAND**

[Name of Planned Unit Development Project]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms

MULTISTATE FHA PLANNED UNIT DEVELOPMENT RIDER                    2/91

GreatDocs™
(Page 1 of 2)
ITEM 6543L1 (032508)

USB000014

**Loan Number:6800187857**

of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this Planned Unit Development Rider.

_____(Seal)　　　_____(Seal)
JOHN J HUDSON　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　-Borrower

_____(Seal)　　　_____(Seal)
　　　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　-Borrower

_____(Seal)　　　_____(Seal)
　　　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　-Borrower

*[Sign Original Only]*

[ADD ANY NECESSARY ACKNOWLEDGEMENT PROVISIONS.]

**MULTISTATE FHA PLANNED UNIT DEVELOPMENT RIDER**　　　　　　　　　　**2/91**

ITEM 6543L2 (032508)　　　　　　　　　　　　　　　　　　　　GreatDocs™
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*(Page 2 of 2)*

USB000015

Exhibit "2"

Inst #: 201303250002583
Fees: $17.00
N/C Fee: $0.00
03/25/2013 03:54:17 PM
Receipt #: 1547673
Requestor:
LSI TITLE AGENCY INC.
Recorded By: MSH   Pgs: 1
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

**RECORDING REQUESTED BY:**

**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

**NDSC NO.: 12-03013-US-NV**
**MIN NO.: 100021268001878574**
**MERS PHONE: 1-888-679-6377**
**APN: 176-20-418-004**

120348320

# CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **U.S. Bank National Association** all beneficial interest under that certain Deed of Trust dated **11/17/2008** executed by **JOHN J HUDSON, A SINGLE PERSON** Trustor, to **FIDELITY NATIONAL TITLE**, Trustee, and recorded on **11/25/2008** as Instrument No. **20081125-0001623** of the Official Records of **CLARK** County, NV describing the land therein:

**AS PER DEED OF TRUST MENTIONED ABOVE.**

Dated: January 16, 2013

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIVE STAR MORTGAGE, ITS SUCCESSORS AND ASSIGNS**

By: Bethany K. Willis
Its:   **Assistant Secretary for MERS, Inc.**

STATE OF Kentucky
COUNTY OF Daviess_____

On Jan. 16 , 20 13 , before me, Jennifer Crabtree_____ , a Notary Public for said State, personally appeared  Bethany K. Willis who personally known to me (or who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Jennifer Crab_____

OFFICIAL SEAL
JENNIFER CRABTREE
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires Jan. 31, 2016
ID # 459377

USB000016

Exhibit "3"

Inst #: 201309240001915
Fees: $18.00 N/C Fee: $0.00
RPTT: $624.75 Ex: #
09/24/2013 01:47:02 PM
Receipt #: 1783688
Requestor:
SFR INVESTMENTS POOL 1 LLC
Recorded By: CDE   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

Please mail tax statement and
when recorded mail to:
**S F R Investments Pool 1, LLC**
**5030 Paradise Road, B-214**
**Las Vegas, NV 89119**

## FORECLOSURE DEED

APN # 176-20-418-004
North American Title #38836                                NAS # N72628

The undersigned declares:

Nevada Association Services, Inc., herein called agent (for the SBH Community 3), was the duly appointed agent under that certain Notice of Delinquent Assessment Lien, recorded November 8, 2012 as instrument number 0002809 Book 20121108, in Clark County. The previous owner as reflected on said lien is John J Hudson. Nevada Association Services, Inc. as agent for SBH Community 3 does hereby grant and convey, but without warranty expressed or implied to: S F R Investments Pool 1, LLC (herein called grantee), pursuant to NRS 116.31162, 116.31163 and 116.31164, all its right, title and interest in and to that certain property legally described as: STORYBOOK HOMES-TOYLAND ADD PHASE 3, PLAT BOOK 131, PAGE 95, LOT 84, BLOCK 1 Clark County

AGENT STATES THAT:
This conveyance is made pursuant to the powers conferred upon agent by Nevada Revised Statutes, the SBH Community 3 governing documents (CC&R's) and that certain Notice of Delinquent Assessment Lien, described herein.  Default occurred as set forth in a Notice of Default and Election to Sell, recorded on 1/8/2013 as instrument # 0001152 Book 20130108 which was recorded in the office of the recorder of said county.  Nevada Association Services, Inc. has complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and Notice of Default and the posting and publication of the Notice of Sale.  Said property was sold by said agent, on behalf of SBH Community 3 at public auction on 9/13/2013, at the place indicated on the Notice of Sale. Grantee being the highest bidder at such sale, became the purchaser of said property and paid therefore to said agent the amount bid $12,000.00 in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured by the Delinquent Assessment Lien.

Dated: September 13, 2013

By Elissa Hollander, Agent for Association and Employee of Nevada Association Services

USB000017

STATE OF NEVADA         )
COUNTY OF CLARK        )

On September 13, 2013, before me, M. Blanchard, personally appeared Elissa Hollander personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same in his/her authorized capacity, and that by signing his/her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

(Seal)                                    (Signature)



M. BLANCHARD
Notary Public, State of Nevada
Appointment No. 09-11646-1
My Appt. Expires Nov. 5, 2013

M. Blanchard

LESSOR'S COPY

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. 176-20-418-004
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land   b. ☑ Single Fam. Res.
   c. ☐ Condo/Twnhse  d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg     f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural  h. ☐ Mobile Home
      ☐ Other

   | FOR RECORDERS OPTIONAL USE ONLY |
   | --- |
   | Book_____ Page:_____ |
   | Date of Recording: _____ |
   | Notes: |

3. a. Total Value/Sales Price of Property      $ _122,294_____
   b. Deed in Lieu of Foreclosure Only (value of property (_____)
   c. Transfer Tax Value:                       $ _122,294_____
   d. Real Property Transfer Tax Due            $ _624.75_____

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section_____
   b. Explain Reason for Exemption: _____
   _____

5. Partial Interest: Percentage being transferred: 100  %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060
and NRS 375.110, that the information provided is correct to the best of their information and belief,
and can be supported by documentation if called upon to substantiate the information provided herein.
Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of
additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant
to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____  Capacity: NAS Employee/Agent for HOA

Signature _____  Capacity: _____

| **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
| --- | --- |
| **(REQUIRED)** | **(REQUIRED)** |
| Print Name: Nevada Association Services | Print Name: S F R Investments Pool 1, LLC |
| Address: 6224 W. Desert Inn Road | Address: 5030 Paradise Road, B-214 |
| City: Las Vegas | City: Las Vegas |
| State: NV          Zip: 89146 | State: NV          Zip: 89119 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**

| Print Name: | Escrow # |
| --- | --- |
| Address: | |
| City: | State:          Zip: |

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

Exhibit "4"

Hudson, John
9574 Bouncing Ball Street

**SBH Community 3**
Account No.:9574BB

NAS #N72628

**Assessments, Late Fees, Interest,**
**Attorneys Fees & Collection Costs**

*Dates of Delinquency:*
06/01/2012-9/13/2013

| | Qty | **Monthly** Present Rate 6/1/2012 9/13/2013 | **CURRENT** NAS FEES 6/1/2012 9/13/2013 | **TOTAL** NAS COSTS 6/1/2012 9/13/2013 |
|---|---|---|---|---|
| Balance Forward | | 0.00 | 0.00 | 0.00 |
| Assessment Amount | | 37.00 | 0.00 | 0.00 |
| No. of Periods Delinquent | | 16 | 0 | 0 |
| Total Assessments Due | | 592.00 | 0.00 | 0.00 |
| Late fee amount | | 10.00 | 0.00 | 0.00 |
| No. of Periods Late Fees Incurred | | 15 | 0 | 0 |
| Total Late Fees Due | | 150.00 | 0.00 | 0.00 |
| Interest Due | | 0.00 | 0.00 | 0.00 |
| HOA/Mgmt Letter | | 50.00 | 0.00 | 0.00 |
| Management Co. Fee/ Admin Fee | | 200.00 | 0.00 | 0.00 |
| Transfer Fee | | 0.00 | 0.00 | 0.00 |
| Demand Letter | | 0.00 | 135.00 | 0.00 |
| Notice of Rescission | | 0.00 | 0.00 | 0.00 |
| Notice of Delinquent Assessment | | | | |
| Lien/Violations Lien | | 0.00 | 325.00 | 0.00 |
| Release of Notice of Delinquent Assessment | | | | |
| Lien/Violations Lien | | 0.00 | 0.00 | 0.00 |
| Mailing | | 0.00 | 68.00 | 100.27 |
| Recording Costs | | 0.00 | 0.00 | 53.00 |
| Intent to Notice of Default | | 0.00 | 75.00 | 0.00 |
| Payment Plan Fee | | 0.00 | 0.00 | 0.00 |
| Payment Plan Breach Letters | | 0.00 | 0.00 | 0.00 |
| Escrow Demand Fee | | 0.00 | 0.00 | 0.00 |
| Notice of Default Fees | | 0.00 | 400.00 | 0.00 |
| Title Report | | 0.00 | 0.00 | 0.00 |
| Property Report | | 0.00 | 0.00 | 195.00 |
| Notice of Sale Fee | | 0.00 | 250.00 | 0.00 |
| Posting & Publication Cost | | 0.00 | 0.00 | 0.00 |
| Publication Cost | | 0.00 | 0.00 | 346.67 |
| E-recording Cost | | 0.00 | 0.00 | 0.00 |
| Posting & Serving Service Cost | | 0.00 | 0.00 | 75.00 |
| Courier | | 0.00 | 0.00 | 0.00 |
| Postponement of Sale | 1 | 0.00 | 75.00 | 0.00 |
| Conduct Foreclosure Sale | | 0.00 | 125.00 | 0.00 |
| Prepare/Record Deed | | 0.00 | 85.00 | 0.00 |
| Property Transfer Tax | | 0.00 | 0.00 | 0.00 |
| Misc: E-recording Costs | | 0.00 | 0.00 | 5.00 |
| Misc: Foreclosure Fee | | 0.00 | 150.00 | 0.00 |
| Subtotals | | $992.00 | $1688.00 | $774.94 |

| **Credit** | **Date** | **Type** | **Amount** | **Payment Credits** | **Amount** |
|---|---|---|---|---|---|
| | | | (0.00) | Assessments/Violations | (0.00) |
| | | | | Interest | (0.00) |
| **OTHER CREDITS** | | | | Late charges | (0.00) |
| **TOTAL** | | | **0.00** | Management Co | (0.00) |
| | | | | NAS Fees | (0.00) |
| | | | | NAS Costs | (0.00) |
| | | | | **PAYMENTS TOTAL** | **0.00** |
| | | | | **TOTAL** | **3454.94** |

Nevada Association Services, Inc. is a debt collector. Nevada Association Services, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose.

Exhibit "5"

# NAS

NEVADA ASSOCIATION SERVICES, INC.

Nevada Association Services
6224 W. Desert Inn Road, Suite A
Las Vegas, NV 89146
Phone: (702) 804-8885
Fax: (702) 804-8887
Toll Free: (888) 627-5544

## Nevada Association Services
## Disbursement Requisition

|  |  |  |  |
|---|---|---|---|
| **Date:** | October 2, 2013 | **Processed By:** | June Gerber |
| **Owner(s) names:** | John Hudson | **N#:** | N72628 |
| **Property Add.:** | 9574 Bouncing Ball Street |  |  |
| **Account Number:** | 9574BB |  |  |
| **HOA:** | SBH Community 3 |  |  |

**Manager**
SBH Community 3
c/o Chantal Delisle
Real Properties Management Group
P.O. Box 95606
Las Vegas, NV 89193-5606

| | |
|---|---|
| **Payment Made By:** | CC/MO |
| **Full or Partial Payment:** | Payment in Full |
| **If Full Payment, Assessments Paid** | September 13, 2013 |

## Amounts to Disburse

| | | |
|---|---|---|
| **NAS Fees** | $1,688.00 | |
| **NAS Costs** | $140.27 | |
| **To HOA:** | $792.00 | |
| **To Mgmt Co:** | $200.00 | |
| **To Title Co:** | $213.00 | North American Title Company, Order# 38836 |
| **To Posting Co:** | $421.67 | Priority Posting & Publishing, Order# 1050527 |
| **Reimbursement** | $1,126.28 | Reimbursement to: Clark County Treasurer, C/o Office of the County Treasurer, 500 S. Grand Central Pkwy, PO Box 551220, Las Vegas, NV 89155-1220 |
| **Reimbursement** | $494.32 | Reimbursement to: REPUBLIC SERVICES, P.O. BOX 98508, LAS VEGAS, NV 89193-8508 |
| **Reimbursement** | $6,924.46 | Reimbursement to: John J Hudson, 9574 Bouncing Ball Street, Las Vegas, NV 89178 |
| **Total Of Payment:** | $12,000.00 | |
| **Notes:** | | |
| | | |
| **Mailing** | $168.27 | |
| **Recording Costs** | $35.00 | |

Nevada Association Services, Inc. is a debt collector. Nevada Association Services, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose.

USB000723

Exhibit "6"

279769
94-177/1224

**NEVADA ASSOCIATION SERVICES, INC.**
**TRUST ACCOUNT**
6224 W. DESERT INN RD.
LAS VEGAS, NV 89146
(702) 804-8885

BANK OF
NEVADA

DATE _____10/3/2013_____

PAY TO THE
ORDER OF _____ SBH Community 3 _____ $ **792.00

Seven Hundred Ninety-Two and 00/100******************************************************** DOLLARS

SBH Community 3
c/o Real Properties Mgmt Grp
PO Box 95606
Las Vegas, NV 89193

VOID AFTER 180 DAYS

MEMO
9574 Bouncing Ball St N72628

⑆279769⑆ ⑈122401778⑈ 7500980752⑆

---

**NEVADA ASSOCIATION SERVICES, INC. / TRUST ACCOUNT**
SBH Community 3                                                           10/3/2013         279769
                          Hudson                                                            792.00

Bank of Nevada Trust    9574 Bouncing Ball St N72628                                        792.00

**NEVADA ASSOCIATION SERVICES, INC. / TRUST ACCOUNT**
SBH Community 3                                                           10/3/2013         279769
                          Hudson                                                            792.00

Bank of Nevada Trust    9574 Bouncing Ball St N72628                                        792.00

Please Reorder from Priority Business Checks Ph. (702) 263-2435 Fax (702) 263-2436 (Ask About All Your Printing Needs)

USB000734

Exhibit "7"

279773

94-177/1224

NEVADA ASSOCIATION SERVICES, INC.
TRUST ACCOUNT
6224 W. DESERT INN RD.
LAS VEGAS, NV 89146
(702) 804-8885

BANK OF NEVADA

DATE _____ 10/3/2013

PAY TO THE
ORDER OF _____ John J Hudson _____ $ **6,924.46

Six Thousand Nine Hundred Twenty-Four and 46/100*********************************************************** ___ DOLLARS

John J Hudson
9574 Bouncing Ball St
Las Vegas. NV 89178

VOID AFTER 180 DAYS

MEMO
9574 Bouncing Ball St N72628

⑈279773⑈ ⑆122401778⑆ 750098075 2⑈

---

NEVADA ASSOCIATION SERVICES, INC. / TRUST ACCOUNT       279773
    John J Hudson                                    10/3/2013
                    Hudson                                      6,924.46

Bank of Nevada Trust    9574 Bouncing Ball St N72628                    6,924.46

---

NEVADA ASSOCIATION SERVICES, INC. / TRUST ACCOUNT       279773
    John J Hudson                                    10/3/2013
                    Hudson                                      6,924.46

Bank of Nevada Trust    9574 Bouncing Ball St N72628                    6,924.46

---

Please Reorder from Priority Business Checks Ph. (702) 263-2435 Fax (702) 263-2436 (Ask About All Your Printing Needs)

USB000740