DIANA CLINE EBRON, ESQ.
Nevada Bar No. 10580
E-mail: diana@KGELegal.com
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
E-mail: jackie@KGELegal.com
KAREN L. HANKS, ESQ.
Nevada Bar No. 09578
E-mail: karen@KGELegal.com
KIM GILBERT EBRON (FKA HOWARD KIM & ASSOCIATES)
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S BANK, NATIONAL ASSOCIATION, <br><br> Plaintiff, <br><br> vs. <br><br> SFR INVESTMENTS POOL 1, LLC, a Nevada Limited Liability Company; DOES 1 through 10; and ROE BUSINESS ENTITIES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 2:15-cv-00287-APG-GWF <br><br> **SFR INVESTMENTS POOL 1, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

SFR Investments Pool 1, LLC ("SFR") hereby files its reply in support of its Motion for Summary Judgment against U.S. BANK, NATIONAL ASSOCIATION (the "Bank"). This reply is based on the papers and pleadings on file herein, the following points and authorities, and such evidence and oral argument as may be presented at the time of the hearing on this matter. This reply is also based on SFR's Motion for Summary Judgment [ECF No. 32] ("SFR's Mot."), which is incorporated fully herein by reference.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Nothing in the Bank's Opposition to SFR's Motion for Summary Judgment [ECF No. 35] ("Bank's Opp.") provides a justification against granting summary judgment in favor of SFR: **(1)** the Bank's retroactivity argument fails since the central case the Bank relies upon is not even germane to the issues in this case; **(2)** the Bank's commercial reasonableness argument

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

lacks merit since the price is commercially reasonable and, in any case, **price alone is never**

**enough**, and there is no evidence of fraud, unfairness, or oppression; **(3)** because there were no

irregularities with the sale constituting fraud, unfairness, or oppression, SFR can rely on the

conclusive recitals in the foreclosure deed; **(4)** the Bank has not provided evidence to overcome

the presumption that the foreclosure sale and resulting deed are valid; **(5)** even if it could,

however, that would not affect the transfer of title free and clear of the Bank's interest to SFR as

a bona fide purchaser; **(6)** SFR is a bonafide purchaser for value; and **(7)** the Bank, a lienholder,

is not entitled to an equitable remedy.

## II.   INCORPORATION OF PREVIOUS ARGUMENTS/FACTS

SFR fully incorporates herein its Statement of Undisputed Facts from its Motion for

Summary Judgment [ECF No. 32].  Additionally, although unnecessary given that the Court has

already adjudicated all but the commercial reasonableness issue in this matter, in reply to the

Bank's Opposition and in an abundance of caution, SFR incorporates by reference herein its

pleadings and prior arguments regarding the already ruled upon issues.[1]  This is no way should

be construed that SFR in any way consents to re-litigation of these issues.

## III.   ARGUMENT

### A.   Chevron Oil is Not Applicable to the SFR decision.

As a preliminary issue, given that the argument of retroactivity has never been claimed or

asserted as an affirmative defense by the Bank, this argument is waived and should be

disregarded.  FRCP 8(a)-(c), 12.  However, even if the waived argument of retroactivity is

considered by this Court, the Bank's position is misguided because Chevron Oil dealt with

retroactively applying new rules of law.  Chevron Oil Co. v. Huson, 404 U.S. 97, 106-107, 92

S.Ct. 349, 355 (1971); see also Harper v. Va. Dep't of Taxation, 509 U.S. 86, 90, 94-95 (1993).

Contrastingly, the SFR decision did not announce a new rule of law.  Instead, SFR involved

statutory construction, an issue devoid of the retroactivity concerns discussed in Chevron Oil.

---

[1] SFR incorporates by references all of the points and authorities set forth in its Motion to Dismiss
Complaint [ECF No. 9], Reply to Plaintiff's Response [ECF No. 16] and Response to the Bank's
Countermotion for Summary Judgment [ECF No. 17].

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

Therefore, <u>Chevron Oil</u> inapplicable under the present circumstances.

Retroactivity concerns are removed from the statutory construction context because, "'[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.'" <u>Morales-Izquierdo v. Dept. of Homeland Sec.</u>, 600 F.3d 1076, 1087-88 (2010) (quoting <u>Rivers v. Roadway Express, Inc.</u>, 511 U.S. 298, 312–13 (1994)) (overruled in part on other grounds by <u>Garfias-Rodriguez v. Holder</u>, 702 F.3d 504, 516 (2012)). When a court interprets a statute, "'it is explaining its understanding of what the statute has meant continuously since the date when it became law.'" <u>Morales-Izquierdo</u>, 600 F.3d at 1088 (quoting <u>Rivers</u>, 511 U.S. at 313 n.12). Consequently, judicial interpretations are given "[f]ull retroactive effect[.]" <u>Morales-Izquierdo</u>, 600 F.3d at 1008 (quoting <u>Harper</u>, 509 U.S. at 97). Here, <u>SFR</u> construed NRS 116.3116. Consistent with the aforementioned authorities, <u>SFR</u> can—and should—be applied retroactively.

**<u>Chevron Oil</u>** set forth three factors that Courts should use in determining whether a rule of law should be applied "nonretroactively[:]"

> **<u>First</u>**, the decision to be applied nonretroactively **must establish a new principle of law**, either by **overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.** **<u>Second</u>**, it has been stressed that we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and **whether retrospective operation will further or retard its operation**. **<u>Finally</u>**, we have weighed the inequity imposed by retroactive application, for **[w]here a decision of this Court could produce substantial inequitable results if applied retroactively**, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

404 U.S. at 106-107 (internal citations and quotations omitted) (emphasis added); <u>see</u> <u>Breithaupt v. USAA Prop. & Cas. Ins. Co.</u>, 110 Nev. 31, 35, 867 P.2d 402, 405 (Nev. 1994) (adopting <u>Chevron Oil</u> for new rules of law).

Even if this Court were to consider the Bank's argument and analyze the Chevron Oil factors, the outcome would result in retroactive application. As to the first factor, <u>SFR</u> did not establish a new principle of law, either by *overruling clear precedent* or by deciding an issue of first impression whose resolution was *not clearly foreshadowed*.  Rather, <u>SFR</u> **confirmed what**

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**was already established law** in NRS 116.3116 – that a portion of an association's lien is senior to the first deed of trust, that an association can non-judicially foreclose on its lien, and that said foreclosure would extinguish junior liens. If anything, <u>SFR</u> confirmed "clear past precedent" upon which litigants like <u>SFR</u> relied, namely the plain language of the statute.  Furthermore, the notion that the Banks could not foresee that the first deed of trust would be extinguished under NRS 116.3116 is ludicrous and disingenuous; the words of 116.3116—"also prior to"—"clearly foreshadowed" this result.

As to the second factor, the test requires a balancing of the pros and cons of a rule to determine "whether retrospective operation [would] further **or retard** its operation." <u>Chevron Oil</u>, 404 U.S. at 106-107 (<u>quoting</u> <u>Linkletter v. Walker</u>, 381 U.S. 618, 729) (emphasis added). Here, nonretroactive (prospective) application would retard operation of the rule by disarming association and investor reliance on the plain language and meaning of NRS 116, and would result in the same "sharp disagreement" that gave rise to the <u>SFR</u> decision in the first place. <u>SFR</u>, 334 P.3d at 412. Retroactive application, on the other hand, furthers the purpose of the rule in ensuring associations get paid by allowing their pre-SFR foreclosure sales to stand.  Conversely, not applying SFR retroactively would retard operation of the rule by potentially eliminating associations' remedies for a homeowner's failure to pay his/her assessments, or a bank's failure to protect its interest pursuant to the plain language of NRS 116.3116 or at least the provisions of its Planned Unit Development Rider.  Thus, by invalidating the pre-<u>SFR</u> foreclosure sales, the associations will have lost the ability to foreclose upon their liens pursuant to NRS 116, and in turn may lose the money they recovered during those foreclosure sales to cover the delinquencies, depending on the flip of the coin decision of their judge.

Finally, analysis of the third prong, inequitable result, is flawed because it directly contradicts the prior rulings of that court regarding due process, and relies on assumptions and arguments already refuted by SFR throughout this litigation, particularly with regard to the understanding of the effect of the extinguishment rule pre-<u>SFR</u>, the sales price and other due process arguments.

In sum, <u>Chevron Oil</u> is inapplicable to <u>SFR</u> in that the latter dealt with statutory

construction of an existing law and not application of a new rule of law. Even still, applying the Chevron Oil factors to the SFR decision actually results in favor of retroactive application.

### B.  The Sale was Commercially Reasonable.

SFR discussed commercial reasonableness in its Motion for Summary Judgment and will attempt only to emphasize portions of or add to that discussion rather than repeat it entirely herein. SFR's Mot., 11:1-16:2.  NRS 116 does not require sales conducted pursuant to those provisions be commercially reasonable. In fact, Shadow Wood never uses the phrase.  However, even if commercial reasonableness were required, the subject sale herein was commercially reasonable.

Under Nevada law, in order to prove a foreclosure sale is subject to unwinding, a party must show (1) low price, and (2) fraud, unfairness or oppression that accounted for and brought about the low price.  See Shadow Wood, 366 P.3d at 1110 (2016) (citing Long v. Towne, 639 P.2d 528, 530 (Nev. 1982)); see also Golden v. Tomiyasu, 387 P.2d 989, 997 (Nev. 1963) (adopting the California rule that "inadequacy of price, **however gross**,[2] is not in itself a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness or oppression as accounts for **and brings about the inadequacy of price**" (internal citations omitted) (emphasis added); see also Centeno v. JP Morgan Chase Bank, N.A., Nevada Supreme Ct. Case No. 67365 (unpublished Order Vacating and Remanding) (Nev. Mar. 18, 2016) (reaffirmance of the holding in Shadow Wood).[3]

As to the first element, the Bank has failed to show that the price paid by SFR was "low." While the Bank attempts to show low price by having this Court compare the price paid to the original loan amount and/or to the amount stated on the Declaration of Value form recorded with the foreclosure deed, neither of these "values" apply to the Association sale in this case. The original loan amount and/or Declaration of Value amount do not provide for the realities of this

---

[2] The Bank's attempt to use "mere inadequacy of price" as a measure of the amount of inadequacy of price is faulty.  See Bank's Opp., 9:18-27.  In fact, the use of the term "mere" in Nevada law is used to explain that price alone is never sufficient by itself to find a sale commercially unreasonable.  See Long, 639 P.2d at 530.

[3] A copy of the Nevada Supreme Court unpublished order is available at http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=35567, as Doc. 16-08672.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   case.  These values assume fee simple property rights are being transferred and that "title is good

2   and marketable," when the reality facing the market was that lenders were potentially

3   challenging title in subsequent litigation.  Even more, these amounts do not reflect what price a

4   property similar to the Property in this case would likely fetch at an NRS 116 sale, but rather

5   provide an estimate of what the Property might fetch if sold at a traditional sale.  In order to

6   determine what price a property similar to the Property in this case would likely garner at an

7   NRS 116 sale, so that one could analyze whether the price paid by SFR here was "low," a

8   comparison of like properties sold at Association foreclosure sales must be compared to the

9   subject Property.  This was not done by the Bank.  In fact, no acceptable evidence of value was

10  provided by the Bank whatsoever.  Having failed to meet the first element of the commercially

11  reasonable standard, the Bank's claim fails.

12      Assuming arguendo that this Court uses the values set forth by the Bank in its

13  Opposition, and uses this as a comparison to conclude that the price paid by SFR was low, the

14  Bank still has failed to show that any fraud, unfairness or oppression brought about or accounted

15  for the low price.  Golden, 387 P.2d at 997. Put in basic terms, commercial reasonableness deals

16  with looking at whether there was **conduct in the sale process that led to the low price**, not

17  merely comparing price to value. See Iama Corp. v. Wham, 669 P.2d 1076, 1079 (Nev. 1983)

18  (must look to the sale process, i.e., "whether proper notice was given, whether the bidding was

19  competitive, and whether the sale was conducted pursuant to . . . normal procedures") (emphasis

20  added). This is consistent with the analysis in BFP v. Resolution Trust Corp., 512 U.S. 1247

21  (1994), as discussed fully in SFR's Motion. [ECF. No. 32, 13:11-14:21.]

22      Here, the Association complied with the notice requirements of NRS 116; the sale was

23  publically noticed, the sale was held in a public place; multiple bidders attended the sale; and,

24  neither the homeowner nor the Bank paid an amount to cure the lien before the sale.[4]  The

25  Bank's weak assertions regarding the inclusion of improper collection costs in the Association's

26  lien and perceived improper distribution of funds post sale do not support a finding of

27

28  [4] See SFR's Mot., Ex. A-4 through A-7, A-9, Ex. 2 at ¶11.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

commercial unreasonableness – these assertions simply do not establish fraud, unfairness or oppression that brought about the low price.

The Bank first claims that "[i]t is indisputable that the HOA's agent improperly took the Subject Property to sale on based on a lien purportedly securing costs of collecting, and such conduct was fraudulent, oppressive, and unfair." Bank's Opp., 11:8-11. There are a series of faults with this claim, the least of which is the Bank's misinterpretation of the Nevada Supreme Court's ruling in <u>Ikon Holdings</u>. The Bank implies that the ruling excludes costs of collecting from the entire lien and proceeding to foreclosure on the entire lien was improper. That is unquestionably not what the case concluded. Rather, the Court in <u>Ikon Holdings</u> determined only that the superpriority portion of the lien did not include collection fees and foreclosure costs incurred by a homeowners' association. <u>See</u> <u>Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC</u>, 132 Nev. Adv. Op. 35 (2016). Despite the Bank's contention otherwise, the Association was entirely within its rights to proceed to sale on entirety of the lien, including collection fees and foreclosure costs.

By claiming that conducting a foreclosure sale "based on a lien purportedly securing costs of collecting" was conduct that amounted to fraud, oppression or unfairness[5], the Bank fails to acknowledge the requirement that any such alleged fraud, unfairness or oppression must **account for and bring about the low price**. <u>Shadow Wood</u>, 316 P.3d at 1110. As thoroughly explained above, to get to commercial unreasonableness, the Bank must not only show fraud, unfairness or oppression, but the Bank must show that it brought about the price issue. <u>Id</u>. The Bank has not and cannot provide any evidence to support a claim that alleged improper inclusion of collection costs "account[ed] for [or] [brought] about" the price paid by SFR. <u>Golden</u>, 387 P.2d at 997. In fact, the Bank's proposition proves just the opposite. If a lien amount (and therefore the starting bid price) includes collection fees and foreclosure costs, it follows that the amounts bid at the sale would be greater, bringing about an increase in the final sales price.

Besides, to the extent the Bank claims that there were improper fees and costs included in

---

[5] See Bank's Opp., 10:22-25, 11:8-11.

the Association's lien, and that this constituted some form of fraud, oppression or unfairness, again, even assuming this were true, this was **not known by SFR**, and therefore could not have accounted for or brought about the price paid by SFR. Id. If anything, as indicated above, **if additional fees and costs were wrongfully included, SFR paid more, rather than less.**

As to the Bank's argument regarding the "post-sale" distribution of proceeds amounting to fraud, oppression and unfairness in the sale, the argument lacks logic.  First, the Bank is attempting to take an action that occurred **after the sale**, and allege that it somehow affected the actual sale procedure.  The process of post-sale distribution of proceeds cannot be considered to have impacted the nature of the sale (whether or not the conduct of the sale was fraudulent, unfair or oppressive) and it most certainly could not have brought about a low price at the sale. Second, even if, as the Bank alleges, the Association's agent did not treat the Bank as a junior lienholder, there is no connection to this alleged Bank treatment by the agent and whether or not the sale was fraudulent, oppressive or unfair.  The agent's post-sale conduct is irrelevant a commercial reasonableness analysis.  Third, the Bank has provided no admissible evidence of the actual considerations of the agent when determining post-sale distribution – in other words, the Bank's assumption that by disbursing sale proceeds to the homeowner, the agent was treating the Bank as a senior lienholder, is unsupported.  The Bank cannot speculate as to why the Association's agent made the decision to distribute sale proceeds in the manner in which it did. Even more, without additional information, the Bank cannot assume that there was any wrongdoing in the manner of distribution. Finally, and most importantly, SFR's payment for the Property served to "discharge [SFR] from obligation to see to the proper application of the purchase money." NRS 116.31166(2). The misapplication of the funds, if there was any, cannot be weighed against SFR in any manner. In short, the Bank has proven absolutely no fraud, oppression or unfairness which accounted for and brought about the price paid by SFR and the Bank's attempt to use post-sale actions of the Association's agent to support its claim is erroneous.

Summarily, because (1) there is no requirement that NRS 116 sales be commercially reasonable, (2) the price paid by SFR was not "low," and (3) the Bank failed to demonstrate any

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

fraud, oppression or unfairness which brought about and accounted for the price paid by SFR, the Bank's commercial unreasonableness argument fails.

### C.   The Bank has not Rebutted the Conclusive Proof and Presumptions Attached to the Association Foreclosure Sale.

Nothing in the Bank's Opp. properly offsets SFR's ability to rely on the recitals in the Foreclosure Deed as conclusive proof of the Association's compliance.   In Nevada, foreclosure sales and the resulting deeds are presumed valid. NRS 47.250(16)-(18).   Further, a foreclosure deed issued pursuant to NRS 116.31164 that "recit[es] compliance with notice provisions of NRS 116.31162 through NRS 116.31168 "is conclusive" as to the recitals "against the unit's former owner, his or her heirs and assigns and all other persons." SFR, 334 P.3d at 411-12 (citing NRS 116.31166(2)).   Additionally, recorded title is presumed valid. Breliant v. Preferred Equities Corp., 112 Nev. 663, 669, 918 P.2d 314, 319 (1996).

A presumption shift the burden of proof.   Yeager v. Harrah's Club, Inc., 111 Nev. 830, 834, 897 P.2d 1093, 1095 (1995) (citing Vancheri v. GNLV Corp., 105 Nev. 417, 421, 777 P.2d 366, 368 (1989) "These presumptions impose on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Id. (citing NRS 47.180).   Here, to defeat the presumption of validity, the Bank must have pled and proven a claim for fraud with particularity, or provided competent evidence of some fraud, unfairness or oppression that was not overshadowed by its own bad acts. Shadow Wood HOA, Inc. v. New York Cmty Bancorp, Inc., 132 Nev. _____, _____, 366 P.3d 1105, 1112; see also Bourne Valley Court Trust v. Wells Fargo Bank, N.A., 80 F.Supp.3d 1131, 1135 (D. Nev. 2015). However, as fully elaborated in SFR's Mot., the Bank would have to prove that the recitals were incorrect to even advance its arguments further, and it cannot since the Bank does not contest notice.   See Complaint [ECF No. 1], ¶¶ 3-5.   Besides, by neglecting to assert fraud, oppression or unfairness in the sale process as an affirmative defense, the Bank waived its right to challenge the foreclosure sale at issue herein. FRCP 8(a)-(c).

Regardless of the above, while the presumption of a regular and proper sale is rebuttable, the presumption is **conclusive** as to a bona fide purchaser. See Moeller v. Lien, 30 Cal.Rptr.2d

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

777, 783 (Ct. App. 1994) (emphasis added); see also, 4 Miller & Starr, Cal. Real Estate (3d ed. 2000) Deeds of Trust and Mortgages § 10:211, pp. 647-652; 2 Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 7:59, pp. 476-477).   This conclusive presumption is key because it "precludes an attack by the trustor on the trustee's sale to a bona fide purchaser even where the trustee wrongfully rejected a proper tender of reinstatement by the trustor[,]" and even where "the sale price was only 25 percent of the value of the property ..." Moeller, 30 Cal.Rptr.2d at 783.   In addition, while here SFR is a bona fide purchaser for value,[6] under Nevada law, it need not be a bona fide purchaser to rely on the recitals as conclusive proof. See Pro-Max Corp. v. Feenstra, 16 P.3d 1074, 1077-78 (2001), opinion reinstated on reh'g (Jan. 31, 2001)(holding that no limitation of bona fide purchaser can be read into a statute providing a conclusive presumption).

**D.      SFR is a Bona Fide Purchaser for Value; Equity Lies in SFR's Favor.**

Nevada law does not require a purchaser at an Association foreclosure sale to be a bona fide purchaser ("BFP") in the first instance (even though SFR is). Instead, this is merely a defense alleged by SFR in the event the Bank claims a pre-sale dispute occurred.   Shadow Wood stood for the proposition that if the Bank claims that a pre-sale dispute occurred between it and the Association or its agent, and SFR had no knowledge of this pre-sale dispute, then equity weighs in favor of SFR.   "Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby."   Shadow Wood, 366 P.3d at 1116 (quoting Nussbaumer v. Sup. Ct. in & for Yuma Cty., 107 Ariz. 504, 489 P.2d 843, 846 (Ariz.1971)).   As fully discussed in SFR's Motion for Summary Judgment, because the Bank did not proffer admissible evidence that SFR had any knowledge precluding it from BFP status, SFR has the valid defense of being a BFP.   SFR's Mot., 16:25-17:12.   As a result, the sale cannot be unwound; nor can SFR be said to have taken the Property subject to the First Deed of Trust.[7]

---

[6] See Bank's Mot., 16:3-18:12 and Sec. III(D) infra.

[7] To the extent the Bank suggests, even by inference, that taking title subject to the first deed of trust is an

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

A BFP is one who "takes the property 'for a valuable consideration and without notice of the prior equity. . . .'" <u>Shadow Wood</u>, 366 P.3d at 1115 (internal citations omitted).  Here, SFR paid valuable consideration for the Property and had no notice of a competing or superior interest in the Property.[8]  The fact that SFR "paid 'valuable consideration' cannot be contested.'" <u>Id.</u> (citing <u>Fair v. Howard</u>, 6 Nev. 304, 308 (1871)).   It is not the amount of the valuable consideration SFR paid, but the fact that it is valuable, which cannot be contested.  <u>Id.</u> Additionally, as the Nevada Supreme Court emphasized, mere knowledge that a party may bring an equitable claim is insufficient to put a purchaser like SFR on "notice of any potential future dispute as to title[]" which could defeat BFP status.  <u>Id.</u> at 1116.  Furthermore, the experience of the purchaser does not automatically defeat bona fide purchaser status. <u>Melendrez v. D & I Inv., Inc.</u>, 26 Cal.Rptr.3d 413, 425 (Ct. App. 2005).

The Bank argues that SFR cannot be a BFP because SFR had record notice of the Bank's deed of trust at the time of the sale and "was fully aware of the highly-contested nature of such sales." Bank's Opp., 14:8-16.  The Bank is wrong.  As indicated herein, the deed of trust is not "senior" to at least a portion of the Association's lien, and the Bank did not take any action in order to redeem the priority of its interest.  Here, SFR purchased the Property with no knowledge of any competing or superior interest in the Property.   The Association perfected its lien by recording its CC&R's on November 23, 2005, well before the First Deed of Trust was recorded on November 25, 2008.  <u>See</u> SFR's Mot., Ex. A-1, A-3.  The recorded foreclosure notices indicated that the Association foreclosure sale was being conducted pursuant to the provisions of NRS 116.  <u>Id.</u> at A-4, A-5, A-7.  NRS 116.3116(2) provides that at least part of the Association's lien is prior to the FDOT.  Additionally, prior to SFR purchasing the Property, no documents were filed or recorded that would have put the world on notice of any disputes with regard to the

---

option, the statute does not provide such an option.

[8] Eighteen months after the <u>SFR</u> decision, the Bank still erroneously claims its interest was superior to the Association. It was not superior, and therefore, at the time of the foreclosure sale, all SFR had notice of was an **inferior** interest in the subject property. <u>SFR Investments Pool 1, LLC v. U.S. Bank, N.A.</u>, 334 P.3d 408 (Nev. 2014).  There needs to be finality to a foreclosure sale, so that buyers will attend and bid, without the continued threat of lawsuits challenging their title. <u>Moeller v. Lien</u>, 25 Cal.App.4th 822, 831-833, 30 Cal. Rptr. 777 (Cal. Ct. App. 1994).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

Property or the Association foreclosure sale, or that the priority position of the Association's lien had changed in any way. <u>Id.</u> at Ex. B, ¶¶ 6, 16. Further, because SFR has no special relationship with the Association or its agent, SFR had no knowledge of any alleged pre-sale disputes between the Association, its agent, the Bank, or any other entity. <u>Id.</u> at ¶¶ 12, 14, 15. Therefore, no purported irregularities in the foreclosure process could be deemed known by SFR. SFR simply attended a publically noticed and advertised foreclosure auction, and placed the highest bid. <u>Id.</u> at Ex. A-8, Ex. B, at ¶¶ 9, 10; Ex. B-1.

What the Bank seeks here is equity. However, as fully discussed in SFR's Motion for Summary Judgment, and below, the bank in not entitled to equitable relief in the instant case.[9] As a lienholder, the Bank has only a collateral interest for which it is entitled to money damages from whatever party injured it, not from SFR, who merely purchased the Property after being the highest bidder at a public auction. <u>Munger v. Moore,</u> 89 Cal.Rptr. 323 (Ct. App. 1970). Thus, even if the Bank could prove some irregularity, it would have an adequate remedy at law and equitable relief is not available herein. <u>See Brown v. Holder</u>, 763 F.3d 1141, 1152 (9th Cir. 2014) (<u>quoting Morales v. Trans World Airlines</u>, 504 U.S. 374, 381, 112 S.Ct. 2031 (1992)("[a] 'court[ ] of equity should not act ... when the moving party has an adequate remedy at law".')

Even considering that the Bank could be entitled to equity, which it is not, courts in equity "must consider the entirety of the circumstances that bear upon the equities[,]" including the actions and inactions of the parties and "whether an innocent party [a BFP] may be harmed by granting the desired relief." <u>Shadow Wood,</u> 366 P.3d at 1115-1116 (<u>citing In re Petition of Nelson</u>, 495 N.W.2d 200, 203 (Minn. 1993) and <u>Smith v. United States</u>, 373 F.2d 419, 424 (4th Circ. 1966)). Such consideration of harm is particularly important where the lender has failed to avail itself of the legal remedies available to it to prevent the foreclosure sale. <u>Shadow Wood,</u> 366 P.3d at 1115, n.7. Further, pursuant to NRS 47.250(2), it is presumed "[t]hat a person intends the ordinary consequences of that person's voluntary act."

---

[9] <u>See</u> SFR's Mot., 9:11-10:2. <u>See also</u> III(E), <u>infra</u>

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

Here, the Bank sat idly by.  Between the date the Notice of Delinquent Assessment Lien was recorded (November 8, 2012) and the date SFR purchased the Property (September 13, 2013) – **a time span of almost a full year** - the Bank **did not** (1) make a payment to the Association or its agent in relation to this Property; (2) attend the association foreclosure sale; or (3) participate in any civil or administrative action challenging the Association lien or Association foreclosure sale before the sale took place.  See SFR's Mot., Ex. A-9, 43:10-44:9.  **Because the Bank chose to do nothing to actually stop the sale, it intended for the ordinary consequences of that sale to occur—that its deed of trust, as a junior lien, would be extinguished and its loan become unsecured**.  NRS 47.250(2).

In sum, although Nevada law does not require that SFR be a BFP, even if the Bank were entitled to equitable relief and its assertion of irregularities with the Association's sale had merit, SFR has the valid defense of being a BFP.  Any supposed irregularities with the sale cannot be imputed to SFR because SFR did not know of, or participate in, causing the supposed irregularities.  Here, the Bank did not produce admissible evidence that SFR had any knowledge precluding it from BFP status.  The Bank has provided no admissible evidence that SFR is anything but a BFP and innocent party, who would be harmed if the foreclosure sale were set aside.  Shadow Wood, 366 P.3d at 1115.  Thus, the sale cannot be unwound, and SFR did not take the Property subject to the First Deed of Trust.

**E.     The Bank as a Lienholder, is not Entitled to Equitable Relief.**

While in some cases "courts retain the power to grant equitable relief from a defective foreclosure sale[,]" Shadow Wood, 366 P.3d at 1110, it is also well-settled in Nevada that courts lack authority to grant equitable relief when an adequate remedy at law exists.  Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n, 646 P.2d 549, 551 (Nev. 1982).  In the present instance, should the bank be able to prove some irregularity with the sale, the Bank has an adequate remedy at law.  Accordingly, the Bank is not entitled to equitable relief.  More specifically, to the extent that the Bank is seeking to have the foreclosure sale or subsequent sale invalidated, or seeking a ruling subjecting the Property to its Deed of Trust, the Bank is not

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  entitled to such equitable relief.

2       As explained above, <u>Shadow Wood</u> indicated that a court may set aside a defective sale

3  on equitable grounds even though the deed recitals contained in NRS 116.31166 are generally

4  conclusive as to those matters asserted.  <u>Shadow Wood</u>, 366 P.3d 1105 at 1112.  However, as

5  even the bank concurs, the fact that the bank was the homeowner in <u>Shadow Wood</u> is an

6  important distinction.  Bank's Opp., 14:2-8.  This variation in circumstances is crucial in this

7  instance because the availability of equitable relief is limited when, such as is the case with the

8  Bank here, the party challenging the validity of the sale is not the homeowner.  The variety of

9  remedies available to a property owner, due to the unique nature of the property, are simply not

10  available to the Bank when money damages would suffice.  <u>See Las Vegas Valley Water Dist. V.</u>

11  <u>Curtis Park Manor Water Users Ass'n</u>, 646 P.2d at 551; <u>see also</u>, <u>Munger v. Moore</u>, 89 Cal.Rptr.

12  323 (Ct. App. 1970).  Thus, assuming arguendo the Bank could prove any such irregularity **its**

13  **remedy would money damages from those who injured it**, not from SFR, who merely

14  purchased the Property at a secondary sale through an arm's length transaction. Unless the Bank

15  can demonstrate actual fraud, unfairness, or oppression **by SFR** at the publically advertised and

16  held auction, which it cannot because it is an impossibility, SFR should not be subject to any acts

17  that would set aside its unencumbered deed.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1

## IV.   CONCLUSION

2    Based on the above, the Court should enter summary judgment in favor of SFR, stating

3  that the Association's foreclosure sale was commercially reasonable, SFR is the title holder of

4  the Property, and that Five Star's deed of trust was extinguished when the Association

5  foreclosed its lien containing super priority amounts, thus making the Bank's purported interest

6  in the first deed of trust invalid.

7    DATED the 26th day of May, 2016

8                                             KIM GILBERT EBRON

9                                             */s/ Jacqueline A. Gilbert*
                                             DIANA CLINE EBRON, ESQ.
10                                            Nevada Bar No. 10580
                                             JACQUELINE A. GILBERT, ESQ.
11                                            Nevada Bar No. 10593
                                             KAREN L. HANKS, ESQ.
12                                            Nevada Bar No. 9578
                                             7625 Dean Martin Drive, Suite 110
13                                            Las Vegas, Nevada  89139
                                             *Attorneys for SFR Investments Pool 1, LLC*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of May, 2016, pursuant to FRCP 5, I served

via the CM/ECF filing system the foregoing **SFR INVESTMENTS POOL 1, LLC'S REPLY**

**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to the following parties:

Gregory L. Wilde, Esq.
Kevin S. Soderstrom, Esq.
TIFFANY & BOSCO P.A.
212 South Jones Blvd.
Las Vegas, NV 89107
(702) 258-8200
Fax: (702) 258-8787
Email: efilenv@tblaw.com
*Attorney for U.S. Bank, National Association*

Kevin S. Soderstrom, Esq.
WILDE & ASSOCIATES
212 S. Jones Boulevard
Las Vegas, NV 89107
(702) 258-8200
Fax: (702) 258-8787
Email: feddc@wildelaw.com
*Attorney for U.S. Bank, National Association*

*/s/ Jacqueline A. Gilbert*
an Employee of Kim Gilbert Ebron

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301